# THE BOARD OF EDUCATION *v.* KEENAN ET AL.

EVIDENCE—PAROLE TESTIMONY TO EXPLAIN RES GESTÆ—LATENT AMBI-
GUITY—MAP.—In an action of ejectment to recover land, alleged to have
been selected as a school lot by the commissioners appointed under certain
ordinances of the Common Council of San Francisco, and the Act of March
11th, 1858, ratifying the same, the plaintiff put in evidence the report of the
commissioners to the Common Council, and the map accompanying the
same, and offered to prove that, before the map and report were filed, the
lots selected by the commissioners, and referred to in their report, were
colored by them on the map; that such coloring was intended to designate
them as school lots; and that the lot in question was one of the lots so
colored, and intended to be designated as school lots. To this offer the
Court sustained an objection, and refused to permit the witnesses to testify.
*Held*, first, that the plaintiff was entitled to prove by witnesses the condition
of the map when it was filed, and that this was substantially included in
the offer to prove that the lots, referred to in the report of the commission-
ers, were colored by them before the map and report were furnished to the
Common Council; secondly, that parole testimony was also admissible to
show that the coloring of the map was done by the commissioners, and the
purpose for which it was done: the grounds of the decision being, that the
purpose of the act was part of the *res gestæ*, and could therefore be proven
by parole testimony; and also, that, it appearing that the purpose of the
coloring was to designate the lots as selected for public purposes, there
arose a *latent* ambiguity, as to which color was intended to designate the
lots selected for school purposes, to remove which, evidence was admissible.
ID.—OBJECTIONS—OFFER OF EVIDENCE.—When an offer is made of a mass of
evidence, complex in its character, and the whole of it is objected to, in
such case, if any part of it is admissible, it is error to exclude the whole.
ID.—ID.—ID.—CASES DISSENTED FROM AND EXPLAINED.—*Hosley* v. *Black*, 28 N.
Y. 444; *Gardner* v. *Barden*, 34 id. 438; *Beebe* v. *Bull*, 12 Wend. 504; *Wharton*
v. *Douglass*, 76 Pa. St. 273, to the contrary effect, dissented from; and *Coveny*
v. *Hale*, 49 Cal. 552, explained, as approving the rule laid down in this case.

APPEAL from a judgment for the defendants, in the Nine-
teenth District Court, City and County of San Francisco.
WHEELER, J.

*John J. Williams*, and *W. C. Burnett*, for Appellant.

The plaintiff ought to have been allowed to introduce the
testimony offered. (*Fenderson* v. *Owen*, 54 Me. 372; *Hite* v. *The
State*, 9 Yerg. 357; *Kell* v. *Charmer*, 23 Beav. 195; *Sweet* v.
*Lee*, 3 Man. & G. 452; *Colwell* v. *Lawrence*, 38 Barb. 643;
*Wilson* v. *Horne*, 37 Miss. 477; *Kinney* v. *Flynn*, 2 R. I. 319;
*Collender* v. *Dinsmore*, 55 N. Y. 205–6; *Dana* v. *Fiedler*, 12
id. 40–6; *Webster* v. *Hodgkins*, 5 Fost. (N. H.) 128; *Early* v.

*Wilkinson*, 9 Gratt. 74; *Piesch* v. *Dickson*, 1 Mason, 11; *F. & M. Bank* v. *Day*, 13 Vt. 36; *Goldshede* v. *Swan*, 1 Ex. 154; *Shore* v. *Wilson*, 9 Clark & F. 555–556; *Lee* v. *Pain*, 4 Hare, 218; 1 Greenl. Ev. §§ 280–282, 286, 287 n. 3, 288, 289, 300; 2 Whart. Ev. §§ 930, 940, 946, 953, 955; Code Civ. Proc. § 1863; *Sawyer* v. *San Francisco*, 50 Cal. 370 (*res gestæ*); *Barclay* v. *Howell*, 6 Peters, 502; *N. O.* v. *U. S.* 10 id. 713–14; *Birmingham* v. *Anderson*, 40 Pa. St. 513; *Lebanon* v. *Commissioners etc.* 9 Ohio, 80; *Westfall* v. *Hunt*, 8 Ind. 176–7.)

*Cope & Boyd*, for Respondents.

The evidence offered by the plaintiffs in relation to the coloring upon the map was properly rejected. We concede the admissibility of oral testimony for the purpose of showing the condition of the map at the time it was made; but the offer was not limited in that way, but was also to show the intention of the commissioners in placing upon the map a mark having no significance in itself. ( *Withington* v. *Eveleth*, 7 Pick. 106; *Kennebec* v. *Tiffany*, 1 Greenl. 223; *Chesley* v. *Holmes*, 40 Me. 536; *Miller* v. *Travers*, 8 Bing. 249; *Wellington* v. *Gale*, 13 Mass. 488; *Boston R. R. Co.* v. *Midland R. R. Co.* 1 Gray, 366; *Commonwealth* v. *Fitchburg R. R. Co.* 8 Cush. 240; *North British Railway Co.* v. *Tod*, 12 Clark & F. 722; *Squire* v. *Campbell*, 1 Mylne & C. 459; *Collender* v. *Dinsmore*, 55 N. Y. 208; *Comstock* v. *Van Deusen*, 5 Pick. 166; *Senterfit* v. *Reynolds*, 3 Rich. 128; *Dillon* v. *Anderson*, 43 N. Y. 236; *Locke* v. *Whiting*, 10 Pick. 279; *Clayton* v. *Nugent*, 13 Mees. & W. 200; *Shore* v. *Wilson*, 9 Clark & F. 565–7; *Goblet* v. *Beechey*, 3 Sim. 24; *People* v. *S. F. Savings Union*, 31 Cal. 136; *Keane* v. *Cannovan*, 21 id. 302; *Gibson* v. *Williams*, 4 Wend. 326; *Madden* v. *Tucker*, 46 Me. 376; 1 Greenl. Ev. §§ 277, 288.)

The evidence was offered as a whole, and if any part of it was incompetent, no error was committed in rejecting it.

McKEE, J.:

The action is ejectment, in which the plaintiff seeks to recover possession of the premises in controversy as a school lot, situate

in the city of San Francisco, which, it is claimed, has been se-
lected by the city of San Francisco under the provisions of
certain ordinances, which have been passed by the Common
Council of the city and been ratified and confirmed by an act of
the Legislature, entitled: "An Act concerning the City of San
Francisco, and to ratify and confirm certain ordinances of the
Common Council of said city"; approved March 11th, 1858.

At the trial in the court below, the plaintiff introduced in
evidence the ordinances referred tò, the act of the Legislature,
the appointment of commissioners to select and set apart lots
for school-houses, hospitals, fire-engine houses, and public squares
for the use of the city, in that part of the city west of Larkin
Street and south-west of Johnson Street, the report of said com-
missioners to the Common Council, the map to which it referred,
together with other evidence tending to show in the plaintiff a
right of entry upon the lot in question.   Defendants admitted
that the lot was in that portion of the city west of Larkin Street
and south-west of Johnson Street; that they were in possession
of it at the commencement of the action, and that it was not
within any exception or reservation mentioned in the decree of
confirmation of lands to the city of San Francisco.   The plaint-
iff then offered to prove, by witnesses in court, that the lots se-
lected by the commissioners, and referred to in their report,
were colored by them upon the map accompanying their report;
that such coloring was intended to designate them as school lots;
that the lot in question was one of the lots so colored, and in-
tended to be designated as school lots, and that this coloring and
designation were done before the map and report were furnished
to the Common Council.   To this offer, the Court sustained an
objection, and refused to allow the witnesses to testify, and that
ruling is assigned as an error.

If no objection had been made to the offer, the Court below
would have permitted the plaintiff to introduce the testimony
of the witnesses.   The defendants, however, objected to the
offer, not on any formal grounds, but on the ground that
the testimony offered was hearsay, incompetent, and contradic-
tory of the map; and the question presented to the Court for
determination was, whether the proposed testimony was subject
to the objections urged against it.   It was in this view that the
attention of the Court was called to it.

"As a general rule," says the Supreme Court of the United States, " we think that the party ought to be confined, in examining the admissibility of evidence, to the specific objections taken to it.   The attention of the Court is called to the testimony in that point of view only."   (*Hinde's Lessee* v. *Longworth,* 11 Wheat. 199 ; *Burton* v. *Driggs,* 20 Wall. 125.)   So in *Coveny* v. *Hale,* 49 Cal. 552, where a defendant offered in evidence a mass of papers to prove that a promissory note, mentioned in an inventory, was the separate property of a married woman, and the objection was, that the papers which were offered were irrelevant, immaterial, and not proof of the fact, it was held that the objection was too broad.   The question, then, here, as it was in the court below, is, was the testimony offered hearsay, incompetent, or contradictory of the map in evidence.

In the report which the commissioners made to the Common Council of the city, and which was part of the evidence in the case, the commissioners say that they had selected the lots and squares for school, fire, and hospital, and other public purposes ; that the number of school lots selected was twenty-eight, and their size one hundred and thirty-seven and a half feet square, except those located on the Potrero, which are one hundred feet by two hundred feet ; and that they had adopted the accompanying plan or map, on which were described the streets as laid out and the lots and squares selected for public purposes. This plan or map was approved and adopted by the Common Council, and their action was afterward ratified and confirmed by the Legislature of the State ; and it is the same map which is in evidence in the case.

It is claimed that certain lots delineated on this map and indicated by certain figures inscribed thereon, were selected by the commissioners as school lots, for the use of the city, by coloring them with different colors.   On the map, certain lots are described, within the lines of which are written certain numerals, the meaning of which the Court below, on the trial of the case, announced it would recognize.   The lot in controversy appears on the map to be colored brown.   Other lots of similar color are also to be found on the map ; but in its condition when presented as evidence in the case, the map itself did not show coloring of many or most of the lots claimed to have been se-

lected for the use of the city. The coloring, if it ever existed, had become obscured or effaced by time, or from some other cause; and the first question included in the offer was, whether. parole evidence was admissible to show that the lots, indicated on the map by the numerals within their lines, were, in fact, colored by the commissioners at the time when the map was made and filed, and became the official map of the city.

If this fact existed at the time when the map was made and became official, it was part of the condition of the map, and of the description of the lots designated thereon. For the map itself shows by a certificate indorsed thereon by the commissioners, that it was made "for the location and dimension of the streets to be laid out west of Larkin Street and south-west of Johnson Street, with the lots of ground selected and set apart for the several public uses as herein designated." By this authentic act it is evident that the map contains the lots or grounds selected and set apart by the commissioners for the several public uses referred to in the Van Ness Ordinance. But how were they designated? If by coloring, and the coloring has disappeared from many of them, it would be competent to show these facts by the testimony of witnesses which would restore the map to its original condition. Such testimony would not be hearsay or incompetent, or contradictory of the map. It would be simply explaining the map, and placing it as evidence before the Court in the legible condition in which it was when it left the hands of its authors, and was approved, adopted, and ratified by the lawful authorities. Parole evidence in aid or explanation of an authentic act is always admissible. The efficacy of such testimony is shown in the case of the *Board of Education* v. *Donahue*, 53 Cal. 190. In that case, the report and map of the commissioners referred to in the offer made in this case, were considered by the late Supreme Court. Parole testimony had been taken at the trial in the District Court to show that certain lots designated on the map had been colored by a draftsman by the direction of the commissioners; and upon such testimony, in connection with the report and map, a majority of the Judges of the Court held that it was the intention of the commissioners to indicate that these colored lots on the map were selected as school lots for the use of the city, and the

other Judges, in concurring, held that the oral testimony established the condition of the map when it was filed and at the time when it became, by law, the official map, and that a reference to and inspection of the report and map sufficiently identified the lots selected by the commissioners.

We therefore think that it was competent for the plaintiff to prove by witnesses the condition of the map when it was filed, and that this was, substantially, included in the offer to prove that the lots on the map referred to in the report of the commissioners were colored by the commissioners, and that this was done before the map and report were furnished to the Common Council.

But it is urged that if that part of the testimony was admissible, the offer as an entirety was bad, because it was an offer good in part and bad in part, and there was no error committed in sustaining the objection to it as an entirety. We have been referred to several decisions of courts where that seems to be the rule. Upon the subject there is, unquestionably, a conflict of opinion. In New York and Pennsylvania it has been held that if an offer contains any matter not admissible as evidence, the whole may be rejected. (28 N. Y. 444; 34 id. 438; 12 Wend. 504; *Wharton* v. *Douglass*, 76 Pa. St. 273.) But in Alabama and Maryland and in the Supreme Court of the United States, the contrary is held to be the more correct rule.

In *Buffington* v. *Cook*, 39 Ala. 64, a motion was made to exclude from the jury all the indorsements on an execution; but a part of them was legal evidence, and the Supreme Court say: "If a portion of the testimony was illegal, the Court was not bound to separate the legal from the illegal evidence, but might properly overrule the whole motion." In *Carroll's Lessee* v. *The Granite Manufacturing Company*, 11 Md. 403, and *Curtis* v. *Moore*, 20 id. 96, the rule is thus declared: When an offer is made of a mass of evidence, complex in its character, and the whole of it is objected to, in such case, if any part of it is admissible, it is error to exclude the whole. In *Moore* v. *The Bank of the Metropolis*, 13 Peters, 302, which was an action in assumpsit upon a promissory note, the plaintiff, after proving by a competent witness that the defendant, before the making of the note in suit, had made several promissory notes which were

discounted by the bank, and the proceeds of which were carried to the credit of the defendant, who drew the money by checks drawn on the bank, and that those notes remained in the bank unpaid until canceled by renewal under a power of attorney which the defendant had executed for that purpose, and that the note in suit was given for the purpose of renewal of the last one of these notes. The plaintiff then offered the canceled notes and bank checks and power of attorney in evidence, to the admissibility of which, or any of the matters above stated in evidence, the defendant objected; but the Court overruled the objection and permitted all of them to be given in evidence, and on appeal, the Supreme Court of the United States says: "It is the duty of a party taking exceptions to the admissibility of evidence to point out the part excepted to, when the evidence consists of a number of particulars, so that the attention of the Court may be drawn to the particular objection. If the exception covers any admissible evidence it is rightly overruled."

We think these cases establish the correct rule on the subject. No injustice can be done by working under such a rule, for the trial court has it within its power to decide upon the admissibility of any part of the testimony included within an offer, when the witnesses are called upon to testify; or if any admitted part of it should be objectionable, it has the power to strike it out on motion. As a rule, we think it has been indirectly, at least, approved by the Court in the case of *Coveny* v. *Hale*, *supra*.

But, independent of this, we think the offer, as an entirety, was not obnoxious to the objections which were made to it; for if the map, upon being restored to its original condition, disclosed the fact that certain lots designated upon it were colored, it would be admissible to show, by extrinsic evidence, that the act was done by the commissioners, and the purpose for which it was done. For the purpose of an act is part of the act itself —*pars rei gestæ;* and may be proved by the simultaneous circumstances, and oral or written declarations of the actors. It may be a difficult matter at times, to determine whether proposed circumstances, or declarations of a person, constitute a part of the transaction; but the principal things for consideration are: Were they contemporaneous with the act in evidence?

And are they so connected with it as to illustrate its character?
If they were contemporaneous, and are so connected with the
act as to illustrate its character, they are admissible as a part
of it.

Wharton defines *res gestæ* as those circumstances which are
the undesigned incidents of a particular litigated act, which are
admissible when illustrative of such act. These incidents may
be separated from the act by a lapse of time more or less appre-
ciable. They may consist of speeches of any one concerned,
whether participant or bystander; they may comprise things
left undone, as well as things done. Their sole distinguishing
feature is that they should be the necessary incidents of the
litigated act; necessary in this sense, that they are part of the
immediate preparations for, or emanations of such act, and are
not produced by the calculated policy of the actors.

Upon the same principle rest the declarations of agents or
officers of corporations made at the time of the particular trans-
action, while acting within the scope of their duties.

Now, if from the contemporaneous circumstances of the act
of coloring the lots, it be made to appear that the purpose of the
commissioners was to designate them as lots selected by them
for public purposes, and that these lots so designated were
painted with different colors, a doubt would arise as to which
color was intended to designate those selected for school pur-
poses. To obviate that doubt, oral evidence of the circumstan-
ces connected with the selection and designation, tending to
identify the lots which were selected for school purposes, would
also be admissible. The coloring, instead of being an arbitrary
and unmeaning act, is the expression of an intention, and when
the intention and expression are connected, they attach to the
objects on which the expression appears; and it is the province
of the Court to apply them so as to determine which of the ex-
pressions was intended to designate the lots selected for school
purposes, and whether the lot in controversy was one of them.
The mode of designation is applicable to two or more subjects;
and, where that is the case, extrinsic evidence is admissible to
prove which of such subjects was intended.

The general rule on the subject will be found stated by Mr.
Greenleaf in his work on Evidence. If the language of an

instrument is applicable to several parcels of land, to several monuments or boundaries,   \*   \*   \*   or if the terms are vague or general, or have several meanings, or if the description of any thing or circumstance is true in part, but not true in every particular, parole evidence is admissible of any extrinsic circumstance tending to show what things were intended, or to ascertain the meaning in any other respect. (1 Greenl. Ev. §§ 288, 239.) And proof of all material facts is admissible, from which the intent of the party in using the expressions may be inferred, or which will enable the Court to identify the thing meant to be designated.

We are, therefore, of opinion that the facts which the plaintiff offered to prove, taken in connection with the other facts already in evidence, were relevant to the issues on trial by the Court, and that the Court erred in refusing to admit testimony to prove them. Whether the testimony, when admitted, would be sufficient or insufficient to prove the fact of selection and designation by the city of the lot in question, under the ordinances in evidence, was for the consideration of the Court when it came to pass upon the rights of the persons to the action.

Judgment and order of nonsuit reversed, and cause remanded for a new trial.

MYRICK, J., and SHARPSTEIN, J., concurred.

ROSS, J., concurred in the judgment, upon the ground first discussed in the opinion of Mr. Justice MCKEE.

McKINSTRY, J., dissenting:

In *Board of Education* v. *Donahue*, 53 Cal. 196, I had occasion to say : " A reference to, and inspection of, a report and map—the *colors* on the latter being restored—sufficiently identify the lots selected by the commissioners as school lots." But, while the plaintiff in the present case, if such an offer had been made, should have been permitted to prove the colors of the map when it was filed, the offer to prove what the commissioners *intended* by the different colors was, in my opinion, properly refused. If such testimony was inadmissible, I feel confident it was not error to reject the offer made *in gross.* It

is admitted that the decisions in New York and Pennsylvania would justify the action of the Court from which this appeal is taken. In Maryland, it would appear to have been held otherwise. In *Moore* v. *The Bank of the Metropolis*, 13 Peters, and *Buffington* v. *Cook*, 39 Ala.—cited in the prevailing opinion—it was simply held that where evidence had been admitted without objection, and a party moved to exclude *the whole* of such evidence, the trial court properly denied the motion—it appearing that a portion was admissible.

I conceive that the rule, as laid down in New York, is fairer to the lower courts, and would better protect the rights of suitors. I am, therefore, compelled to dissent from the judgment.

[THORNTON, J., being disqualified, took no part in the decision of this case.]