FORÉS, PLAINTIFF AND APPELLEE, v. BALZAC, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Mayagüez in an Action for Damages.

No. 2144.—Decided March 17, 1921.

SLANDER.—Calling an attorney and notary public a ''swindler'' in connection with a matter in which he acted as such, in an office where the title deeds in which the said attorney and notary took part are recorded, and in the presence of the registrar and employees of the registry, who heard the epithet and understood its meaning, is slander *per se,* because it clearly and necessarily tends to destroy the professional credit of the said attorney and notary.

The facts are stated in the opinion.

*Mr. Angel A. Vázquez* for the appellant.

*Messrs. Benito Forés* and *José Sabater* for the appellee.

MR. JUSTICE DEL TORO delivered the opinion of the court.

Benito Forés Moraza sued Galo Balzac Faria for ten thousand dollars as damages. He alleged in his complaint that he had been practicing as an attorney-at-law and notary public since 1902, being well known and having a large clientage in San Germán; that on July 26, 1918, he went to the registry of property and there the defendant, without any good reason and in a loud voice and violent manner, said, addressing the plaintiff:

"I am here looking over the frauds (*chanchullos*) which you (pointing to the plaintiff) and Alfredo have perpetrated, as you are

accustomed to do; Alfredo took the sidetracks and you thought that Adolfo would never die."

The plaintiff explains that by these expressions the defendant maliciously meant to say the following:

"That this plaintiff, as an attorney-at-law and notary public, is a thief and in the exercise of his profession engages in illicit schemes particularly for the purpose of profiting at the expense of his clients and other persons; that this plaintiff and Alfredo Ramírez entered into a conspiracy for the purpose of profiting from the estate of Adolfo Ramírez de Arellano and indirectly from the properties of the defendant's wife, an heiress of the said Adolfo Ramírez de Arellano; that this plaintiff is accustomed to commit such thefts and engage in such illicit schemes; that by means of the said conspiracy between this plaintiff and Alfredo Ramírez, the latter had stolen all of the sidetracks in making the partition of the Isabel Josefa plantation in the proceedings for tutorship and incapacity instituted in this court by Camila Ramírez, another heiress of Adolfo Ramírez, as case number 6319 of this court; that the said conspiracy was to remain unpunished because Adolfo Ramírez de Arellano was incapacitated and might live a long time, but the said Adolfo having died, the conspiracy would be disclosed; that this plaintiff and Alfredo Ramírez were lucky in that the court, referring to this district court, had approved the partition, which otherwise would have been contested."

The plaintiff further alleged that "the said words were uttered by the defendant in the presence of Emigdio S. Ginorio, Registrar of Property of San Germán, Enrique Báez, an official of the registry, and Manuel Martín and Francisco Delgado, clerks, who heard the said language distinctly and understood its meaning;" that upon hearing the said expressions the plaintiff "felt humiliated, astonished and abashed and they caused him great moral suffering, being a reflection upon the plaintiff in his profession and upon his professional reputation, and he still feels humiliated and morally injured." And that "the defendant uttered these words against this plaintiff, wilfully and maliciously and with the intent to molest, vex and injure him and has gravely injured him in

his professional reputation, knowing such charges to be false and that by them he would discredit and disgrace, as he has . discredited and disgraced, this plaintiff by giving publicity in San Germán to such false charges which have become known to his numerous clients, thus producing from that time a marked decline in his professional business, to the moral, material and pecuniary damage of this plaintiff, which he estimates at the sum of ten thousand dollars.''

The complaint was verified and in his verified answer the defendant admitted the facts relating to the parties and to his having met the plaintiff in the registry of property. He alleged that he was in the registry ''examining in the books the records entered as a result of the partition of the Isabel Retiro plantation and at that moment the defendant was greatly excited because, according to his best information, in making that partition the plaintiff had favored as much as possible the coowner, Alfredo Ramírez, who was his client,  *  *  *  and said  *  *  * : I am here looking over these frauds (*chanchullos*), for they have had their effect.'' He further alleged that he uttered these words in general terms and in a moment of excitement or anger; that they were not heard by other persons, and that neither their tendency nor his intention was to injure the plaintiff, who left the registry in a good humor and did not suffer any damage or discredit in his profession.

The case went to trial. The court heard the evidence of the parties and gave judgment for the plaintiff for the sum of five hundred dollars, with the costs, expenses and disbursements.

From this judgment the defendant took the present appeal, alleging that the court erred ''in sustaining the complaint, inasmuch as the evidence is insufficient to support that judgment.''

The allegations of the complaint as a whole show that the words were addressed to the plaintiff in his professional

capacity, and if any defect could be observed in the complaint, it would be necessary to conclude that it was corrected by the answer and by the evidence, which shows that the defendant uttered the said words at the time, in the place and within the hearing of the persons mentioned in the complaint, who heard them and could infer from them and from the antecedents of the matter, also disclosed by the evidence, that they were uttered by the defendant under circumstances different from those of the case of *Palou* v. *Ríos,* 23 P. R. R. 337, cited by the defendant, the defendant being conscious of what he was doing and having the intention of injuring the plaintiff in his professional reputation in the manner explained in the innuendo quoted, the words having been so understood at least by the registrar who had entered the records which the defendants was examining.

The word *chanchullo* is derived from *chancha* which means ''deceit, subterfuge, artfulness, lying'' and, according to the Dictionary of the Spanish Royal Academy, the derivative means ''an illicit scheme to carry out a purpose and particularly to make a profit.'' Ginorio, the Registrar of Property of San Germán, testified that ordinarily it means ''something that is wrong; something that is not correct.'' Attorneys Oscar Souffront and Juan Alemañy also testified as to the meaning of the word. The former said:

''The broad meaning of the word *chanchullo,* as understood by any person in any social sphere and as understood both by a scholar and by an illiterate person, is a criminal act done in combination with another person; any act which would actually reflect upon the honesty of a person. A *chanchullero* is a person who can not be trusted, because all of his acts are tainted with dishonesty.''

And the latter testified:

''By *chanchullo* is understood a mystification of the acts of an attorney; unprofessional acts in which an attorney has taken part.''

The charge of being a shyster (*chanchullero*), which ac-

cording to the said dictionary is applied to a person "who likes to engage in intrigues (*chanchullos*)," made against an attorney and notary in connection with a matter in which he participated as such, in an office in which are recorded property titles advised and attested by the said attorney and notary and within the hearing of the chief and employees of that office, is actionable *per se,* because it clearly tends to destroy the professional standing of the said attorney and notary.

In summing up the jurisprudence 25 Cyc. 326, says:

"It may be stated as a general rule that published words, whether written or oral, are actionable if they directly tend to the prejudice or injury of any one in his profession, trade, or business. The actionable character of the charge lies in the fact that it injures the party in his business or profession, and hence it is not necessary that the words should contain an imputation upon plaintiff as an individual which would be actionable apart from the question of his business or profession. * * *

"A defamatory charge oral or written touching an attorney in his profession is actionable *per se.*"

As a starting point for a more full and ample study of the questions which perhaps might have been raised in this case, but were not, see the cases of *People* v. *Ritchie,* 42 Pac. 209; note to *Newton* v. *Grubbs,* 48 L. R. A., (N. S.) 362, and *Harris* v. *Zanone,* 93 Cal. 59, 64.

A careful consideration of this case as a whole may justify the inference that the defendant was in fact a neurasthenic, as he was described by his own expert; that he imagined that his interest had been unjustly invaded by the plaintiff, and that, without any kind of proof, he insulted the plaintiff in the violent and aggressive manner described, charging him with acts which if true would greatly damage the personal and professional reputation of the plaintiff. It is also to be observed that the defendant is regretful and has attempted to explain his act as best he could. Notwithstanding

this, the injury was done and as the sum of five hundred dollars damages fixed by the court is not excessive, we are of the opinion that the appeal must be dismissed and the judgment appealed from

*Affirmed.*

Chief Justice Hernández and Justices Aldrey and Hutchison concurred.

Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

I maintain that the complaint fails to state a cause of action. The only averment therein that even remotely alleges that the words spoken were uttered of the complainant in his professional capacity are contained in an innuendo and hence not a statement of fact and not under oath. The innuendo is only an interpretation or a characterization of the facts and never a statement of a fact. The office of an innuendo never is to charge facts. The foregoing principles were enunciated by Mr. Chief Justice Shaw in an early case in Massachusetts although I cannot momentarily find it and may ask the reporter to add it later. Authorities that support the foregoing views are *Pollard* v. *Lyon,* 91 U. S. 233; *Grant* v. *Dreyfus,* 120 Cal. 62; *Mellen* v. *Times-Mirror,* 140 Pac. 277; *Legg* v. *Dunleavy,* 50 A. R. 512; *Mundy* v. *Hart,* 46 Mo. 46; *Watson* v. *Detroit Journal,* 52 L. R. A. (N. S.) 480. These cases show that if words are not necessarily libelous *per se* it is the office of an inducement, and not of an innuendo, to make them appear so.

The words in the complaint on their face were not libelous *per se,* inasmuch as they made no reference to the fact that complainant was a lawyer or that the acts charged against him were committed in his capacity as such. As the words charged a combination between two persons to commit frauds, if the acts charged were capable of being performed by laymen and "Don Alfredo" was not a lawyer, something should

have been alieged to show that the words referred to some act done by the complainant independently of "Don Alfredo." The presumption would be that "Don Alfredo" was not a lawyer.

The facts bore out the doubts I have. No one was shown to have understood the words as referring to the complainant in his capacity as a lawyer. The defendant was examining the books of the registry and charging complainant and "Don Alfredo" with frauds. But frauds are committed by all sorts of people and if some are discovered in the registry of property and a lawyer intervenes in them, there is no presumption that the frauds were committed in his professional capacity as a lawyer or even as a notary.

Words of this kind to be libelous *per se* must be spoken of a person in his office, trade or profession and must impeach his skill, knowledge or his official or professional conduct. When they contain only a general imputation equally injurious to anyone of whom they might be spoken, they are not libelous *per se,* unless a special application to the complainant's professional character is shown. Newell on Libel and Slander, section 175; 25 Cyc. 327, notes 75, 76, 77 and 78.