[No. 13075. In Bank. — January 22, 1892.]

## CATHERINE E. HARRIS, RESPONDENT, v. DOMINGO ZANONE, APPELLANT.

SLANDER — PLEADING — CHARGE OF THEFT — APPLICATION TO PLAINTIFF — UNDERSTANDING OF HEARERS. — A complaint in an action of slander, which alleges that the defendant, at a specified time and place, in the presence and hearing of divers persons, spoke the words, "She is a damned thief," of and concerning the plaintiff, is sufficient, and need not allege that the words charged to have been spoken were understood by those who heard them to refer to the plaintiff.

ID. — COMMON-LAW RULES OF PLEADING — INDUCEMENT — COLLOQUIUM — MEANING OF WORDS — CONSTRUCTION OF CODE. — The common-law rules as to the requirements of pleading in an action of slander, as respects the inducement and *colloquium*, are dispensed with by section 460 of the Code of Civil Procedure, so far as they show that the defamatory words applied to the plaintiff, though the averments necessary in common-law pleading to show the meaning of the words must still be made.

ID. — ISSUABLE FACT — EVIDENCE — EXTRINSIC FACTS. — The allegation that the libelous words were spoken "of and concerning the plaintiff" is an issuable fact, as was the *colloquium* under the common law, and if denied, must be established at the trial by evidence of any extrinsic facts showing the application to the plaintiff of the defamatory matter.

ID. — ACTIONABLE CHARACTER OF WORDS — MEANING OF WORDS NOT UNDERSTOOD. — If the words used are not libelous in themselves, or if they have some occult meaning or local signification, and require proof to determine their meaning or to show that they are libelous, or if they are words in a foreign language, it is necessary to make such allegation of their meaning as will show them to be actionable.

ID. — WORDS LIBELOUS IN THEMSELVES — VERNACULAR — APPLICATION TO PLAINTIFF. — Where words charged to have been spoken are libelous in themselves, and are uttered in the vernacular of those to whom they are addressed, it is not necessary, in an action of slander, to make any other averment than that they were spoken " of and concerning the plaintiff," nor to allege that they were understood by the hearers to apply to the plaintiff.

ID. — ALLEGATION OF FALSITY OF WORDS — IMPLICATION OF MALICE. — An allegation that the defamatory words spoken of the plaintiff "were false" implies malice on the part of the defendant, and it is not necessary to allege in the complaint, or to establish by proof in the first instance, that the words were spoken with malice.

ID. — PLEA OF PRIVILEGED COMMUNICATION — ISSUE OF MALICE — EVIDENCE OF OTHER UTTERANCES. — An allegation in the answer that the words were spoken in a privileged communication raises the issue of malice, upon which the plaintiff is entitled to introduce any competent evidence of express malice as fully as though it had been alleged in the complaint and denied in the answer; and other utterances of words of similar import would be competent evidence for that purpose.

ID. — PRESENCE OF DIVERS PERSONS — PUBLICATION — VARIANCE. — An allegation that the defendant had spoken the defamatory words "in the

presence and hearing of divers good and worthy persons " is but the. formal averment of a publication, and proof of the publication in the presence of one person satisfies the averment, without a literal proof as alleged.

ID. — SINGLE PUBLICATION AVERRED — LIMIT OF RECOVERY — ELECTION BE-TWEEN SEVERAL UTTERANCES PROVED. — Where the complaint charges but a single publication, the plaintiff is only entitled to recover damages therefor, and is not entitled to recover damages sustained by the utter-ance of similar words on other occasions, which may be proven merely to show malice; and it is not error for the trial court to refuse to com-pel the plaintiff, at the close of the testimony, to elect which of the pub-lications was the original and which the repetitions.

ID. — PRIVILEGED COMMUNICATION — CIRCUMSTANCES OF PRIVILEGE — QUES-TION OF FACT. — Whether slanderous words uttered are a privileged communication depends upon the circumstances under which they were uttered; and in the absence of a concession of the facts under which it was made, the court cannot determine as matter of law whether the communication was privileged, but the jury must determine the facts.

ID. — EVIDENCE — EXPRESS MALICE — ABSENCE OF PRIVILEGE. — Evidence that the defendant had repeated the defamatory words to others upon different occasions, together with evidence tending to establish the fal-sity of the charge, and that the defendant had expressed a purpose to injure the plaintiff's reputation, warrants the jury in finding that the defendant was actuated by express malice in the utterance of the words, and not, therefore, entitled to the immunity of a privileged communica-tion.

ID. — THREATS TO RUIN REPUTATION — EVIDENCE OF MALICE. — Evidence for the plaintiff respecting the threats of the defendant to ruin the plain-tiff's reputation is admissible for the purpose of establishing malice.

ID. — CHARGE OF THEFT — LOSS OF MONEY BY THIRD PERSON — HEARSAY. — Upon a trial for slander in uttering a false charge of theft, evidence offered by the defendant to show that a third person had represented to the defendant that he had lost money from his pocket while the plain-tiff was in the employ of the defendant, without any offer to show that such person had in fact lost any money, is hearsay, and inadmissible.

ID. — ANIMUS OF PLAINTIFF — REQUESTS TO SECURE TESTIMONY. — Testi-mony offered by the defendant for the purpose of showing the *animus* of the plaintiff in bringing the action, to the effect that the plaintiff had besought certain persons to endeavor to secure testimony in her behalf, is properly rejected by the court, as it would not affect her right of recovery.

ID. — TESTIMONY OF PHYSICIAN — COMMUNICATION NOT CONFIDENTIAL. — Testimony of a physician as to a conversation between himself and the defendant, which was not "information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient," cannot be rejected as a "confidential communication."

ID. — EXPRESS MALICE — DAMAGES — DISCRETION. — In an action for slander, where express malice is shown, the amount of damages to be awarded is within the just discretion of the jury, and their verdict will not be dis-turbed, unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury was under the influence of passion or prejudice.

ID. — FALSE CHARGE OF THEFT — VERDICT NOT EXCESSIVE. — A verdict of five thousand dollars, in an action for slander in uttering a false charge of theft against the plaintiff, will not be set aside upon appeal as excessive, where the record does not disclose anything from which it could be said that the damages were awarded under the influence of prejudice or passion, though the amount may appear larger than the facts demanded.

ID. — INSTRUCTION — PRIVILEGED COMMUNICATION — MALICE. — An instruction asked by the defendant to be given the jury respecting privileged communications, which omits the qualification that the communication was not privileged unless made without malice, is properly rejected by the court, especially where the jury were fully and properly instructed upon the law as to privileged communications.

OFFER OF EVIDENCE — FAILURE TO OBJECT SPECIFICALLY. — When an offer is made of a mass of evidence, part of which is admitted by the opposing counsel to be relevant, but he declines to point out the portion to which he objects as irrelevant, notwithstanding the offer of the trial judge to rule thereon and reject such part as is inadmissible, it is not error to admit the whole.

APPEAL from a judgment of the Superior Court of Humboldt County, and from an order denying a new trial.

The jury found in favor of the plaintiff, assessing the damages at five thousand dollars. Further facts are stated in the opinion of the court.

*Wilson & Wilson, Ernest Sevier,* and *E. W. Wilson,* for Appellant.

The demurrer to the complaint should have been sustained, on the ground that the complaint did not state facts sufficient to constitute a cause of action. (*De Witt* v. *Wright,* 57 Cal. 576; *Pike* v. *Van Wormer,* 5 How. Pr. 171; *Fry* v. *Bennett,* 5 Sand. 54; *Moore* v. *Bennett,* 48 Barb. 229.) Not only is there no averment that the persons who heard the words knew the plaintiff was meant, but there is no averment that the words spoken were "so understood by at least some one third person." Such an allegation was equally necessary, in order to enable the plaintiff to maintain an action on it. (*De Witt* v. *Wright,* 57 Cal. 577; Townshend on Slander and Libel, secs. 95, 96, 108; *Miller* v. *Maxwell,* 16 Wend. 9; *Woolworth* v. *Meadows,* 5 East, 231; *Bourke* v. *Warren,* 2 Car. & P. 307.) The damages were excessive, and were evi-

dently given under the influence of passion or preju-
dice. (*McDaniel* v. *Baca*, 2 Cal. 340; 56 Am. Dec. 339;
1 Graham and Waterman on New Trial, 409 et seq.;
*Rhodes* v. *Naglee*, 66 Cal. 678; *Wilson* v. *Fitch*, 41 Cal. 363.)
Any circumstance in mitigation of damages should have
been sent to the jury. (*Wilson* v. *Fitch*, 41 Cal. 379; *Lick*
v. *Owen*, 47 Cal. 258.)   There is no proof of actual mal-
ice in this case, and without such proof one is protected
from damages for slander, when the language was used
in the *bona fide* discharge of any legal, moral, or social
duty. (See *Long* v. *Peters*, 47 Iowa, 239; *Sunderlin* v.
*Bradstreet*, 46 N. Y. 188; 7 Am. Rep. 322; *State* v. *Lons-
dale*, 48 Wis. 348.)   If the trial court was in doubt as to
the truth of the statements of plaintiff, it was its duty to
grant a new trial of the case. (*Dickey* v. *Davis*, 39 Cal.
565.)

*Horace L. Smith*, and *S. M. Buck*, for Respondent.

·The slanderous words alleged were unambiguous, and
actionable *per se*, and therefore no averment was neces-
sary to show their meaning. (Townshend on Slander and
Libel, 4th ed., secs. 308, 310; *Langton* v. *Hagerty*, 35 Wis.
158.)   A complaint which avers that defendant spoke
certain words of and concerning plaintiff, and setting
forth words which are actionable *per se*, sufficiently states
a cause of action. (*Malone* v. *Stillwell*, 15 Abb. Pr. 421;
*Robinson* v. *Keyser*, 22 N. H. 323; *Sturtevant* v. *Root*, 27
N. H. 69; 2 Chitty's Pleading, 16th Am. ed., 542, note;
and see Folkard's Starkie on Slander and Libel, sec. 436,
and Wood's notes; Bliss on Code Pleading, sec. 305;
Starkie on Slander and Libel, 285, 298; *Bloss* v. *Tobey*,
2 Pick. 328; *Rhodes* v. *Naglee*, 66 Cal. 678; Townshend
on Slander and Libel, 180; *Fry* v. *Bennett*, 5 Sand. 54;
*Pike* v. *Van Wormer*, 5 How. Pr. 171; *Clark* v. *Jones*, 49
Iowa, 478; *McLaughlin* v. *Russell*, 17 Ohio, 479.)   The
facts stated in the complaint herein have always been
held sufficient under the provisions contained in section
460 of the Code of Civil Procedure. (*Butler* v. *Howes*,
7 Cal. 88; *Hitchcock* v. *Caruthers*, 82 Cal. 524; *Nestle* v.

*Van Slyck,* 2 Hill, 284; *Crane* v. *O'Reilly,* 11 N. Y. St.
Rep. 279; *Crookshank* v. *Gray,* 20 Johns. 348; *Cook* v.
*Rief,* 20 Jones & S. 302; *Bradley* v. *Cramer,* 59 Wis. 310–
314; 48 Am. Rep. 511; *Guard* v. *Risk,* 11 Ind. 157, 158;
*Emmerson* v. *Marvel,* 55 Ind. 268; *Burton* v. *Burton,* 3
G. Greene, 316; *Reeves* v. *Bowden,* 97 N. C. 30; *Hutts* v.
*Hutts,* 51 Ind. 581; *Doan* v. *Kelley,* 121 Ind. 413; *Petsch*
v. *Dispatch Printing Co.,* 40 Minn. 291; *Carroll* v. *White,*
33 Barb. 615–620.) Even if there were a defect in the
complaint, it was cured by the defendant's answer.
(*Schenck* v. *Hartford Fire Ins. Co.,* 71 Cal. 29; Pomeroy's
Remedies and Remedial Rights, sec. 579; *Hegard* v. *Cali-
fornia,* 11 Pac. Rep. 597; *Witcher* v. *Rehmond,* 27 Tenn.
475; *Sanderson* v. *Hubbard,* 14 Vt. 462; *Atteberry* v. *Pow-
ell,* 29 Mo. 434; 77 Am. Dec. 579; *Cass* v. *Anderson,* 33
Vt. 182.) The damages given in this case are excess-
ively small, and no impartial person reviewing the evi-
dence can possibly come to any other conclusion. (See
*Ross* v. *Innis,* 35 Ill. 487; 85 Am. Dec. 380; *Chamberlin*
v. *Vance,* 51 Cal. 85; *Aldrich* v. *Palmer,* 24 Cal. 516;
*Barry* v. *Edmunds,* 116 U. S. 565.) Under the instruc-
tions of the court, the verdict establishes that defend-
ant's repeated publications to Loheide of the slander
were malicious, and made *mala fide.* (*White* v. *Barber,*
123 U. S. 392.) Therefore defendant's communications
to Loheide were not privileged. (*O'Donaghue* v. *McGov-
ern,* 23 Wend. 32.) There was no error in the court
refusing to determine as a question of law that the com-
munication by the defendant to the witness W. H. Lo-
heide was privileged. (*White* v. *Carroll,* 42 N. Y. 161;
1 Am. Rep. 503. See *Dixon* v. *Allen,* 69 Cal. 527.) The
court did not err in admitting the evidence in respect to
the threats of the defendant to ruin the plaintiff's repu-
tation, as part of it was clearly admissible, and so ad-
mitted by the counsel for the defendant, who declined
to point out the part claimed to be inadmissible. (*Board
of Education* v. *Keenan,* 55 Cal. 648; *Moore* v. *Bank of
Metropolis,* 13 Pet. 302.)

HARRISON, J. — Action for slander.

It is alleged in the complaint "that on or about the fifteenth day of April, 1887, at the city of Eureka, in the county of Humboldt, and state of California, the defendant, in the presence and hearing of divers good and worthy persons, spoke the following words of and concerning the plaintiff: 'She is a damned thief.'"

The appellant contends that this allegation is insufficient, and that the demurrer to the complaint should have been sustained, for the reason that it is not alleged that the words charged to have been spoken were understood by those who heard them to refer to the plaintiff.

Under the common law, a declaration for slander had become so artificial and prolix, by reason of the technical objections to its form that the courts were wont to sustain in respect to the distinctions to be observed between the averment, the inducement, the *colloquium*, and the innuendo, and the requirements of strictly confining to each and elaborately presenting therein the matter that belonged to that head, that the action, instead of being the mode by which a plaintiff could obtain satisfaction for an injury he had sustained, was often made the means by which justice was herself smothered in her own robes. The case of *Miller* v. *Maxwell*, 16 Wend. 9, is an illustration of this, and is said to have been a potent factor in bringing about the radical change in the rules of pleading which were effected in the state of New York in 1848. When this reform in pleading was made, and all forms of action were merged in a complaint in which the facts constituting the plaintiff's cause of action were to be stated in ordinary and concise language, so deeply had the form of pleading in actions of slander become rooted into the system, that it was deemed necessary to make a special provision against the necessity of continuing that form. Accordingly, it is provided in section 460 of the Code of Civil Procedure: "In an action for libel or slander, it is not necessary to state in the complaint any extrinsic facts for the purpose of showing the application to the plaintiff of the

defamatory matter out of which the cause of action
arose, but it is sufficient to state generally that the
same was published or spoken concerning the plaintiff;
and if such allegation be controverted, the plaintiff
must establish on the trial that it was so published or
spoken."

By this provision the inducement and *colloquium* are
dispensed with, and if the words charged are libelous in
themselves, the plaintiff is only required to allege that
the libelous words were spoken "of and concerning the
plaintiff." This is an issuable fact, as was the *collo-
quium* under the former system, and if denied, must be
established at the trial. If the words used are not libel-
ous in themselves, or if they have some occult meaning or
local signification, and require proof to determine their
meaning or to show that they are libelous, or if they are
words in a foreign language, it is necessary to make such
allegation of their meaning as will show them to be ac-
tionable, and by averment "to ascertain that to the court
which is generally or doubtfully expressed." (*Van Vechten*
v. *Hopkins*, 5 Johns. 220.) "The statute dispenses with
them [that is, the *colloquium* and innuendo] only so
far as they show that the defamatory words applied to
the plaintiff, and goes no further. The averments neces-
sary in common-law pleading to show *the meaning of the
words* must still be made." (Bliss on Code Pleading,
sec. 305. See also *Fry* v. *Bennett*, 5 Sand. 54; *Petsch* v.
*Dispatch P. Co.*, 40 Minn. 291; *McLaughlin* v. *Russell*,
17 Ohio, 479; *Wesley* v. *Bennett*, 5 Abb. 498; *Pike* v. *Van
Wormer*, 5 How. Pr. 171; *Cook* v. *Rief*, 20 Jones & S. 302.)
In such a case it is necessary to aver that the persons
who heard the words understood that such meaning
was intended. This, however, is only for the purpose
of showing that to the minds of the hearers the words
were libelous, and therefore injurious to the plain-
tiff. Whether those who heard the words understood
that they had reference to the plaintiff is one of the
"extrinsic facts" by which the application of the defam-
atory matter to the plaintiff, if controverted, must be

established on the trial, but need not be alleged. Their application to the plaintiff is to be established by proof, and the understanding by the hearers that they were applicable to the plaintiff is included in the averment that they were spoken "concerning the plaintiff." In *Russell* v. *Kelly*, 44 Cal. 641, 13 Am. Rep. 169, the rule was established in this state that it might be shown at the trial by the testimony of witnesses that they understood from the language of the libel that the plaintiff was the person intended thereby. The averment showing the libelous character of the words places them in the same category as does the allegation of speaking libelous words in the English language. If the words charged to have been spoken are in the vernacular, and are libelous in themselves, then there need be no allegation that the hearers understood them to have reference to the plaintiff. "Where the language published is the vernacular of the place of publication, it requires no proof that those who heard or read it understood it. . . . . Where the matter published is in a language which he who hears or reads it understands, it will be assumed he understood it in the sense which properly belongs to it." (Townshend on Slander and Libel, sec. 97.)

In the present case the words used are libelous in themselves, and being in the English language, are presumed to have been understood by the hearers to be libelous; and the allegation that they were spoken "of and concerning the plaintiff" imports that the hearers so understood them. It would violate all rules of construction of language to hold that when the defendant said, concerning the plaintiff, "She is a thief," those who heard him did not understand that he said that the plaintiff is a thief.

In *De Witt* v. *Wright*, 57 Cal. 576, the court held, in an action for a *libel*, that the allegations in the complaint, similar to those in the present case, were insufficient in not averring that those who read the libel understood that the plaintiff was intended thereby, saying: "To enable the plaintiff to maintain an action on

it, it is essential not only that it should have been writ-
ten concerning the plaintiff, but also that it was so
understood by at least some one third person," and that
section 460 of the Code of Civil Procedure " does not do
away with the necessity of the averment that the person
or persons who read the writing or heard the words
knew the plaintiff was meant." This construction of
section 460 is at variance with the terms of the section
itself, and is not supported by authority, and cannot, we
think, be sustained upon principle.

Upon a careful and extended examination of the au-
thorities, we have not been able to find any other case
in which it has been held that when the words charged
to have been spoken are libelous in themselves, and
were uttered in the vernacular of those to whom they
were addressed, it is necessary to make any averment
other than that they were spoken " of and concerning
the plaintiff," or to allege that they were understood by
the hearers to apply to the plaintiff. None of the text-
writers lays down such a rule, and the precedents of
declarations found in Chitty do not contain such an
allegation. The cases cited in *De Witt* v. *Wright*, 57 Cal.
576, in support of the proposition were cases in which
the words charged to have been uttered were not libelous
in themselves, and the decisions thereon were only to
the extent that it must be averred that the hearers un-
derstood the libelous sense in which the words were
used, and that by those words a libelous charge was
made, and not that the plaintiff was the person to whom
they were applicable. The court in that case applied
the rule which requires such averment when the words
used are ambiguous or innocent in themselves; but this
rule, as we have seen, is inapplicable to a case in which
there is no ambiguity or uncertainty in the words used.

In the editions of Chitty published since the enact-
ment in England of the Common-Law Procedure Act,
corresponding to our Code of Civil Procedure, the prece-
dent for a declaration in slander is given as follows: " For
that the defendant falsely and maliciously spoke and

published of the plaintiff the words following, that is to say, 'He is a thief.' " (2 Chitty's Pleading, 16th ed., 547.) In *Robinson* v. *Keyser*, 22 N. H. 323, the declaration alleged that the defendant " did speak and publish of and concerning the plaintiff the false, scandalous, and malicious words following, to wit, 'He [meaning the said Robinson] is a thief and a liar, and I [meaning the defendant] can prove it.' " Upon demurrer to the sufficiency of this declaration, the court said: " Where the words, according to their usual acceptation, plainly import of themselves the charge of a crime, no *colloquium* or innuendo is necessary. It is sufficient if they are alleged to have been spoken of the plaintiff." In *Ryckman* v. *Delavan*, 25 Wend. 194, the court said: " In verbal slander the whole conversation is seldom set out, for if that was required, it would generally be impossible to prove the whole conversation as laid in the declaration. It is therefore allowable in such cases to set out the actionable words, and merely to show that they were intended to be applied to the plaintiff, and must have been so understood by those who heard them, by averring that they were spoken in a conversation of and concerning him; and the declaration in such case will be good if the actionable words could have been applied personally to the plaintiff, leaving him to establish by proof upon the trial that the defendant did in fact apply them to him personally, and not merely to him and others as a class, and that those who heard the words understood them to be thus individually and personally applied."

The court did not err in refusing to compel the plaintiff, at the close of the testimony, to elect which of the publications was the original and which the repetitions. The complaint charged a single publication, and of this the plaintiff made proof. It was for the damage sustained by this publication alone that the plaintiff was entitled to recover. For the purpose of showing malice in its publication, it was competent for the plaintiff to offer proof that the defendant had on other occasions

uttered the same or similar words, but for the damage sustained by the utterance of the words on those occasions the plaintiff was not entitled to recover in this action; consequently she could not be compelled to elect either of those publications as the basis of her recovery herein. It was not necessary for the plaintiff to allege in her complaint, or to establish by proof in the first instance, that the defamatory words were spoken with malice. Her allegation that "the said words were false" implied malice on the part of the defendant. For the purpose of rebutting this presumption, the defendant had pleaded that the words were spoken in a privileged communication, and if so, it then became necessary for the plaintiff to prove express malice. The issue of malice was therefore tendered by the answer of the defendant, and the facts therein set forth were by the statute " deemed controverted" as fully as though spread upon the record. Upon this issue the plaintiff was at liberty to introduce any competent evidence of express malice as fully as though it had been alleged in her original complaint and denied in the answer of the defendant; and other utterances of words of similar import would be competent evidence for that purpose. (*Evening Journal Ass'n* v. *McDermott,* 44 N. J. L. 430; 43 Am. Rep. 392; *Chamberlin* v. *Vance,* 51 Cal. 84; 2 Greenl. Ev., sec. 418; Townshend on Slander and Libel, sec. 392.)

It was not necessary for the plaintiff to show that the words were uttered in the presence of more than one third person. The allegation that the defendant had spoken the words " in the presence and hearing of divers good and worthy persons" was but the formal averment of a publication, and proof of the publication in the presence of one person satisfied the averment, without a literal proof as alleged.

Whether the utterance of the words by the defendant to the witness Loheide was a privileged communication depended upon the circumstances under which they were uttered, and by which such claim would be qualified. The court could not determine as a matter of law

that this was a privileged communication, unless the facts under which it was made were conceded; and in the absence of such concession, it was necessary that the jury should determine those facts. (*Klinck* v. *Colby*, 46 N. Y. 431; 7 Am. Rep. 360.) The court, however, fully instructed the jury upon the evidence introduced for the purpose of showing that the communication was privileged, and the facts necessary to establish such a relation between the witness and the defendant as would render it a privileged communication, and that if they found such facts from the evidence, the communication would be privileged, and was to be disregarded unless there was other evidence of malice than would be implied from the falsity of this communication.

A privileged communication is defined in section 47 of the Civil Code to be one made,— "3. In a communication, without malice, to a person interested therein, by one who is also interested, or by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent, or who is requested by the person interested to give the information"; and in such a case, by section 48: "Malice is not inferred from the communication or publication," but must be established by extrinsic proof.

Evidence was offered in behalf of the plaintiff that the defendant had repeated the defamatory words to others upon different occasions, and there was other evidence before the jury tending to establish the falsity of the charge, and also that the defendant had expressed a purpose to injure her reputation. If the jury believed this evidence, they were authorized to find therefrom that the defendant was actuated by express malice in the utterance of the words to Loheide, and therefore was not entitled to the immunity of a privileged communication.

The evidence of the plaintiff respecting the threats of the defendant to ruin her reputation was admissible for the purpose of establishing malice. When this testimony was offered, the counsel for the defendant admitted

the relevancy of a portion of it, but declined to point out the portion to which he objected as irrelevant, notwithstanding the offer of the court to rule thereon and reject such as was inadmissible. The court, therefore, did not err in admitting the evidence offered. (*Board of Education* v. *Keenan,* 55 Cal. 642.)

The offer on the part of the defendant to show by the testimony of Mrs. Zanone that one Antone Chisa had represented to the defendant that he had lost ten dollars from his vest pocket while the plaintiff was in the employ of the defendant, was clearly inadmissible. It was but hearsay, and without any offer to show that Chisa had in fact lost any money.

The court also properly rejected the testimony offered to show that the plaintiff had besought Hildreth and Owens to endeavor to secure testimony in her behalf. The testimony offered to be shown had no relevancy to any issue before the jury, and its tendency to establish the *animus* of the plaintiff in bringing the suit, as claimed by counsel, would have no weight in determining her right of recovery.

The relation of the witness Wallace to the defendant was not such as to preclude him from testifying to the conversation between them. It was not "any information acquired in attending the patient which was necessary to enable him to prescribe or act for the patient." (Code Civ. Proc., sec. 1881, subd. 4.)

The record does not disclose anything from which it can be said that the damages awarded by the jury appear to have been given under the influence of passion or prejudice. It is very difficult to determine the proper amount of damages in an action of this character, and the law has wisely left it to the just discretion of the jury, and has also given to them the right, upon proof that the defendant was guilty of malice, to give damages for the sake of example, and by way of punishing the defendant. (Civ. Code, sec. 3294.) There can be no measure of compensation for the wrong done to a plaintiff by charging her with a crime, except the judgment of

an impartial jury. Under the evidence before it, the jury must have found that the defendant was guilty of malice in the utterance of the words charged, and it cannot be said that the amount awarded is so great as to "shock the moral sense." In *Wilson* v. *Fitch*, 41 Cal. 386, where there was no proof of express malice, and, as was held by the court, not a case of punitive damages, it was said, upon the claim that the damages awarded were excessive: " The court will not interfere in such cases, unless the amount awarded is so grossly excessive as to shock the moral sense and raise a reasonable presumption that the jury was under the influence of passion or prejudice. In this case, whilst the sum awarded appears to be much larger than the facts demanded, the amount cannot be said to be so grossly excessive as to be reasonably imputed only to passion or prejudice in the jury. In such cases there is no accurate standard by which to compute the injury, and the jury must necessarily be left to the exercise of a wide discretion, to be restricted by the court only when the sum awarded is so large that the verdict shocks the moral sense and raises a presumption that it must have proceeded from passion or prejudice."

The court did not err in refusing to give to the jury the instruction asked by the defendant respecting privileged communications. The jury were fully instructed upon that subject in other portions of the charge, and the instruction asked was faulty in omitting the qualification that the communication was not privileged unless it was made without malice.

The judgment and order denying a new trial are affirmed.

SHARPSTEIN, J., McFARLAND, J., DE HAVEN, J., GAROUTTE, J., and BEATTY, C. J., concurred.

PATERSON, J., concurring.— I concur in the judgment, and in all that is said in the opinion of Mr. Justice Harrison, except that relating to *De Witt* v. *Wright*, 57 Cal.

576. In that case the question as to the proper construction of section 460 of the Code of Civil Procedure was determined after full argument and careful consideration, and I think it should be adhered to, whether it agrees with our views of the section or not. It is a matter of very little importance which of the two constructions is placed upon the statute, but it is desirable for the information and guidance of the pleader, that a construction once made should be adhered to.

The complaint, according to the rule laid down in *De Witt* v. *Wright*, 57 Cal. 576, is insufficient; but the defendant waived the objection and cured the defect by alleging in his answer that he, in speaking to Loheide for the purpose of informing him as to the true character of the plaintiff, said: " I believe she [meaning the plaintiff] is a thief." The answer leaves no doubt that whatever was said referred to plaintiff, and that Loheide so understood it.

Rehearing denied.