## T. W. ECKERT v. W. W. VANPELT.

**No. 13,641.**  ( 76 Pac. 909.)

SYLLABUS BY THE COURT.

1. LIBEL—*Eunuch.*  A newspaper publication stating that a man is a eunuch is actionable *per se.*

2. ———— *Petition Construed and Sustained.*  In an action for damages founded on the publication of a libelous newpaper article, an allegation in the petition that the printed language was used "of and concerning him, the said plaintiff," imports that those who read it so understood.

Error from Cowley district court ; JAMES LAWRENCE, judge.   Opinion filed May 7, 1904.   Affirmed.

*J. E. Torrance,* and *S. C. Bloss,* for plaintiff in error.

*C. T. Atkinson,* for defendant in error.

The opinion of the court was delivered by

SMITH, J. :   On May 23, 1902, plaintiff in error, T. W. Eckert, who was the editor of the Arkansas City *Daily Traveler,* printed and published in his newspaper the following :

"It is reported that Charlie McIntire may soon take charge of Greer's supplement in this city.   Charlie is all right.   In fact, anybody would be an improvement on the eunuch who is snorting. around in the basement, but unable to do anything else."

Soon after this publication defendant in error, W. W. VanPelt, began an action for damages sustained by reason of the alleged libel.   The petition alleged that the *Traveler* was a newspaper of general circulation in Arkansas City and Cowley county ; that the plaintiff, W. W. VanPelt, was the owner and publisher of a weekly newspaper of general circulation in said city and county and in southern Kansas ; that

he was of good name, credit, reputation, and social standing, and enjoyed the fellowship, esteem, confidence and good opinion of many persons of both sexes; that at the time of said publication he was known and recognized as a man possessed of a due amount of potency, virility, and masculinity, and of all the various members and powers which characterize the male portion of the human race, and was a young, unmarried man, "in the lusty prime of vigorous youth."

After alleging that the libelous matter was published by defendant with intent to injure plaintiff, to provoke him to wrath, to expose him to public ridicule, hatred, contempt, and disgrace, and deprive him of public confidence and social intercourse, and like matter, the petition sets out the libelous language, with innuendos explanatory thereof, as follows:

"It is reported that Charlie McIntire may soon take charge of Greer's supplement (meaning thereby the Arkansas City *Enquirer*, of which this plaintiff is the owner and proprietor, and that the said Arkansas City *Enquirer* was not and is not owned and controlled by this plaintiff, but was and is owned and controlled by E. P. Greer.) Charlie is all right. In fact, anybody would be an improvement on the eunuch (meaning thereby this plaintiff, and that this plaintiff was and is a eunuch) who is snorting around in the basement (meaning thereby that this plaintiff was and is a teaser), but is unable to do anything else (meaning thereby that this plaintiff was and is devoid of all sexual powers, and was and is an emasculated man.)"

Defendant below demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was overruled. It is argued that this ruling of the court was erroneous, for the reason that the newspaper article alleged to be

libelous did not contain the name of plaintiff below, and because there was no allegation that the public understood the language used to refer to VanPelt. The averments of the petition expressly charge that defendant published the words "of and concerning him, the said plaintiff." The omission of the name of a libeled person in a publication concerning him does not deprive the matter of its libelous character if it be alleged and shown to whom the words used were intended to apply. Whatever may have been the common-law rule, it is not now necessary to allege, in order to state a cause of action, that the public understood the words printed to refer to the plaintiff. Section 4559, General Statutes of 1901, reads:

"In an action for libel or slander, it shall be sufficient to state, generally, that the defamatory matter was published or spoken of the plaintiff; and if the allegation be denied, the plaintiff must prove on the trial the facts showing that the defamatory matter was published or spoken of him."

Counsel for plaintiff in error cite the case of *De Witt v. Wright*, 57 Cal. 576, which supports their claim for the necessity of an averment that the person or persons who read the article knew that the plaintiff was meant. This case, however, was expressly overruled in *Harris v. Zanone*, 93 Cal. 59, 28 Pac. 845, in which it was said that the rule of the former case is not supported by authority or justified on principle. (See 13 Encyc. Pl. & Pr. 40.) Where the language used is the vernacular of the place where published, it requires no proof that those who heard or read it understood it. (Town. Sl. & L., 2d ed., § 97.) The allegation that the language was used "of and concerning him, the said plaintiff," imports that those who read it so understood. (*Harris v. Zanone*, supra.) There was testimony in the case tending to show that persons

who read the *Daily Traveler* understood the article to apply to plaintiff below. One witness, Mr. Hess, testified without objection that it was so understood generally.

Counsel for plaintiff in error further claim that the publication was not libelous *per se;* that it may be interpreted to mean that the editorial efforts of plaintiff below in his attacks on Mr. Eckert were weak—barren of thought; and that "snorting" may be defined as "loud in roaring sound." Reference is made to the Century Dictionary, where the secondary definition of the word "eunuch" is given as "unproductive, barren," with this quotation from Godwin : "He had a mind wholly *eunuch* and ungenerative in matters of literature and taste." The primary and general definition of the word given in all the dictionaries is "a castrated male of the human species." It must be given its usual and ordinary sense as understood in the place where used. We are quite sure that in Arkansas City and vicinity, where the parties resided, the primary signification of the term was conveyed to all persons who read the libelous article in the *Daily Traveler.*

Section 2271, General Statutes of 1901, reads :

"A libel is the malicious defamation of a person, made public by any printing, writing, sign, picture, representation, or effigy, tending to provoke him to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefits of public confidence and social intercourse, or any malicious defamation made public as aforesaid, designed to blacken and vilify the memory of one who is dead, and tending to scandalize or provoke his surviving relatives and friends."

Written words are actionable *per se* if they tend to render him of whom they are written contemptible or

ridiculous.   ( 18 A. & E. Encycl. of L., 2d ed., 909.)
So, if they are calculated to produce social ostracism.
(*Finch v. Vifquain*, 11 Neb. 280, 9 N. W. 43 ; *Culmer
v. Canby*, 101 Fed. 195, 41 C. C. A. 302 ; *Allen v. The
News Publishing Co.*, 81 Wis. 120, 50 N. W. 1093.)
To say of a woman that she is a hermaphrodite is ac-
tionable without alleging special damages.   (*Malone v.
Stewart and Wife*, 15 Ohio, 319, 45 Am. Dec. 577.)

In *Hetherington v. Sterry*, 28 Kan. 426, 429, 42 Am.
Rep. 169, Mr. Justice Brewer, speaking for the court,
quoted approvingly from Townshend on Libel and
Slander, section 176, as follows :

"That language in writing is actionable *per se*
which denies 'to a man the possession of some such
worthy quality as every man is *a priori* to be taken to
possess,' or which tends 'to bring a party into public
hatred or disgrace,' or 'to degrade him in society,' or
or expose him to 'hatred, contempt, or ridicule,' or
'which reflects upon his character,' or 'imputes some-
thing disgraceful to him,' or 'throws contumely' on
him, or 'contumely and odium,' or 'tends to vilify
him' or 'injure his character, or diminish his reputa-
tion,' or which is 'injurious to his character,' or to
his 'social character,' or shows him to be 'immoral
or ridiculous,' or 'induces an ill opinion of him,' or
'detracts from his character as a man of good morals,'
or alters his 'situation in society for the worse,' or
'imputes to him a bad reputation,' or 'degradation of
character,' or 'ingratitude,' and 'all defamatory words
injurious in their nature.' ' "

There can be no question or doubt that the publica-
tion made was libelous *per se*.   In such cases malice
is implied.

Testimony was excluded by which defendant below
offered to show that he was acting in self-defense when
he published the libelous words ; that VanPelt had
been publishing libelous articles about him.   We can-

not consider this assignment of error. The publications concerning Eckert are not in the record, and therefore we cannot know what was said in them.

An inquiry was made of plaintiff below upon cross-examination whether he had not, in June preceding, called Eckert a blackmailer, or words to that effect. An objection was sustained to this question, and rightly. Any libelous charges against the defendant after May, 1902, when the article which is the basis of this action was published, were immaterial, if they were admissible under any circumstances of the case. (1 Suth. Dam., 3d ed., § 152.)

The verdict of $700 was sustained by the evidence, and the judgment of the court below will be affirmed.

All the Justices concurring.