### SNYDER v. NEW YORK PRESS CO., Limited.

(Supreme Court, Appellate Division, First Department. March 11, 1910.)

LIBEL AND SLANDER (§ 16*)—NEWSPAPER ARTICLE—HOLDING UP TO RIDICULE.
  A newspaper article, stating falsely that an Irish maid permitted a process server to see her mistress while in the bath tub, on his statement that she would be glad to see him, and that on entering the bath room the mistress screamed, but that nevertheless he served a subpœna, etc., is libelous as holding her up to ridicule and lowering her character in the estimation of the community, since an article may be libelous, though it does not impute immoral conduct.

  [Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. § 16.*]

Appeal from Special Term, New York County.

Action by Emilie Snyder against the New York Press Company, Limited. From an interlocutory judgment sustaining a demurrer to the complaint, plaintiff appeals. Reversed.

The plaintiff sued for the publication by the defendant of the following article concerning her:

Court Hears How Woman in Bath Tub Got Subpœna.

Process Server Just Walked in to Hand Papers to Her.

Her Screams Drove him Out.

Naive Maid Responsible for Embarrassing Situation of Realty Man's Wife.

An Irish maid's mistake, it was brought out yesterday in the City Court before Judge La Fetra, put Mrs. Herbert R. Snyder, wife of a realty man of No. 312 West 109th Street in an embarrassing situation several days ago.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

A process server was permitted to enter Mrs. Snyder's bath room when she was in the tub. That enabled him to serve on her a subpœna in supplementary proceedings on a judgment of $40 obtained by butcher against her husband.

"That horrid process server," Mrs. Snyder blushingly explained in court, "walked right into my bath room to serve his subpœna, and I was in the bath tub."

. The case before the court was to have been a motion to have the subpœna vacated on the ground that it was impossible for the process server to identify Mrs. Snyder in the circumstances. It was shown that the man had retreated when he saw Mrs. Snyder in the tub because she started to scream. He served the paper, however, by giving it to a hand which was extended from the bath room. The fact that the hand was attached to a naked arm led the man to believe he was giving the paper to the woman whom he surprised in the tub, and he was sure that woman was Mrs. Snyder. Thompson & Ballantine of No. 27 William Street, counsel for Emil Oppemheimer, the judgment creditor, refused to tell the name of the process server, suggesting it would be harmful to the man in his business if his identity were revealed.

As the lawyers told the story to Judge La Fetra, the subpœna server reached the Snyder home shortly after Snyder had gone down town to business. Mrs. Snyder was taking her morning bath when the bell rang. Her Irish maid, mentioned in court only as Bridget, opened the door. The process server walked into the flat, and insisted on seeing Mrs. Snyder.

"But, sir," the girl said, "she's in the bath tub." "That doesn't make any difference," the man replied, "I'm sure she's anxious to see me."

The maid took him at his word, led him to the bath room, and threw open the door. The man stepped in and then saw his predicament. Mrs. Snyder impressed it on him further by screaming excitedly. The man dodged out of the room, pulling the door after him, but insisted that Mrs. Snyder come out of the tub and get the paper. She was only too willing to do that, so she could slam the door and lock it.

She alleged said article to be wholly false.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Thomas G. Prioleau, for appellant.
E. Mortimer Boyle, for respondent.

MILLER, J. It seems to us that the article complained of has a direct tendency to subject the plaintiff to unfavorable comment, to diminish her respectability, to abridge her comfort and enjoyment, and to expose her to public ridicule, such as provokes contempt, not merely such as may be sportive and thoughtless. See Lamberti v. Sun Printing & Publishing Co., 111 App. Div. 437, 97 N. Y. Supp. 694. The point of the story, if it have a point, seems to be the ability of the process server to identify her. She is made to appear in court and relate the story of the service of the subpœna upon her in a proceeding to test that question, which the article says "was to have been a motion to have the subpœna vacated on the ground that it was impossible for the process server to identify her in the circumstances." Whether any covert meaning was intended by the use of the past tense is not plain. The article stated that the process server was sure that the woman he surprised was the plaintiff. Her maid is said to have admitted a man to her bath room while she was taking a bath, upon his assurance that she was very anxious to see him. The sting of that is not taken out by calling it the mistake of a "naive" maid, nor

by saying that the plaintiff resented the intrusion. Servants in many ways reflect the character of their master or mistress.

An article may be libelous, though it does not impute immoral conduct. The whole tenor of this article is to ridicule the plaintiff. It has a direct tendency to lower her in the estimation of the community, though it may not charge immoral conduct, or impute immoral character. It is unnecessary to cite authority for the general definition of libel; but see Triggs v. Sun Printing & Publishing Co., 179 N. Y. 144, 71 N. E. 739, 66 L. R. A. 612, 103 Am. St. Rep. 841, and cases cited.

The defendant contends that the article is innocent, and belongs to a class generally recognized as having a "news value." It is difficult to perceive what news value it can have, and impossible to discover its literary value. If newspapers see fit to give their readers fiction as news, they do so at their peril. Such an article should not be held harmless, unless, in the language of Judge Martin in the Triggs Case, it is "perfectly manifest" that it is.

The interlocutory judgment should be reversed, with costs, and the demurrer overruled, with the usual leave to plead over on payment of costs. All concur.