## VAN WIGINTON v. PULITZER PUB. CO.

(Circuit Court of Appeals, Eighth Circuit. November 17, 1914.)

No. 4018.

1. LIBEL AND SLANDER (§ 56*)—PORTRAITS—PUBLICATION—GOOD FAITH—PARTIAL DEFENSE—DAMAGES.

Where defendant published plaintiff's portrait as that of another in connection with an article describing efforts of such other to save her father from suffering the death penalty imposed on him for murder, the fact that the mistake was committed innocently was not a complete defense to plaintiff's action for libel, but bore only on the measure of damages.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 153–156; Dec. Dig. § 56.*]

2. LIBEL AND SLANDER (§ 123*)—PORTRAITS—PUBLICATION—SPECIAL DAMAGE.

Where defendant innocently published plaintiff's portrait in connection with an article relating to the work of another young woman to save her father from execution for murder, there was an imputation that the original of the picture was the person mentioned in the text; and as this might tend to prejudice the respectable portion of society against plaintiff, it could not be said as a matter of law that she suffered no injury, and hence she was entitled to go to the jury on the question of damages, without proof of special damage.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 356–364; Dec. Dig. § 123.*]

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by Myrtle Van Wiginton against the Pulitzer Publishing Company. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

C. M. Rice, of St. Louis, Mo. (Lewis & Rice, of St. Louis, Mo., Watkins & Vinson, of Little Rock, Ark., and A. T. Dumm, of Jefferson City, Mo., on the brief), for plaintiff in error.

John F. Green, of St. Louis, Mo. (Judson, Green & Henry, of St. Louis, Mo., on the brief), for defendant in error.

Before SANBORN and HOOK, Circuit Judges, and POPE, District Judge.

HOOK, Circuit Judge. This was an action by Myrtle Van Wiginton against the Pulitzer Publishing Company for libel. When the evidence was in, the trial court directed a verdict for the defendant.

[1] The defendant published in its newspaper of wide circulation an article from a correspondent in Arkansas under these headlines:

"Girl, 14, Pleads to Save Father from Gallows.

"Lizzie Pierce Interests Little Rock Charity Workers in Her Cause."

The article stated with some detail that one Henry Pierce had been convicted and sentenced to be hanged for the murder of his wife; that his defense was that he discovered she was unfaithful and that the shot that killed her was intended for her paramour; that Lizzie Pierce, his daughter, and stepdaughter of the murdered woman, had

come from a distance to appeal to the Governor of the state to save him from the death penalty by commuting his sentence to imprisonment for life. Under the descriptive heading, "Girl Working to Save Father from Gallows," was a picture of Myrtle Van Wiginton, the plaintiff, who was in no way related to the Pierces and had nothing to do with the crime or the effort for clemency. She was 17 years of age and just out of school.

The evidence at the trial tended strongly, if not conclusively, to show that the newspaper correspondent acted innocently, but in his effort to obtain a photograph of Lizzie Pierce was deceived by the photographer, who gave him one of the plaintiff instead. For that reason the trial court directed a verdict for defendant. If the misuse of plaintiff's picture in the way indicated is actionable, the lack of knowledge and of bad intent of the defendant and its correspondent bears upon the measure of damages, but is not a full defense. In Peck v. Tribune Co., 214 U. S. 185, 189, 29 Sup. Ct. 554, 555 (53 L. Ed. 960, 16 Ann. Cas. 1075) the court said:

"There was some suggestion that the defendant published the portrait by mistake, and without knowledge that it was the plaintiff's portrait, or was not what it purported to be. But the fact, if it was one, was no excuse. If the publication was libelous, the defendant took the risk. As was said of such matters by Lord Mansfield, 'Whatever a man publishes he publishes at his peril.' * * * The reason is plain. A libel is harmful on its face. If a man sees fit to publish manifestly hurtful statements concerning an individual, without other justification than exists for an advertisement or a piece of news, the usual principles of tort will make him liable, if the statements are false, or are true only of some one else."

[2] The real question in the case is whether the plaintiff, who offered no proof of special damage, was nevertheless entitled to have her case considered by the jury. When the picture of one person is used as that of another, whose character, conduct, or relations are made the subject of a publication, the imputation is that the original of the picture is the person mentioned in the text. In this case the imputation was that the plaintiff was the daughter of a convicted murderer, the circumstances of whose crime and defense were as set forth in the published article. Many statements in writing or print are actionable that would not be so in the case of spoken words. This distinction between libel and slander is well settled, and is due largely to the greater definiteness, wider circulation, and permanence of the former, and because the deliberation which generally precedes it gives more apparent verity to the false accusation and results in more general belief.

In the law of libel the social standing of a person is regarded as of value, and damage is implied from a false and unprivileged publication which tends to impair it, to make him contemptible or ridiculous, or to deprive him of the confidence, good will, or esteem of his fellow men. In determining whether the false imputation tends to impair the social standing of a person, or to affect injuriously his opportunities of social intercourse, the customs and standards of society are to be regarded. In other words, society is to be taken as it is, with its recognized prejudices, without determining whether they

are well founded in reason or justice. For example, all reasonable persons would agree that grave injury might be done by falsely and widely publishing of a young woman of good character that she was the illegitimate daughter of dissolute, criminal parents, though the social prejudice excited against her personally could not be sustained in reason.

It is not essential, however, that all who read the publication should be alike affected. In Peck v. Tribune Co., supra, the libel consisted of an advertisement in defendant's newspaper of a brand of whisky, with a recommendation stated as based on personal experience and use by a woman described as a nurse. Her name and also what purported to be her portrait were given. The plaintiff, whose picture was used without authority, was neither a nurse nor a user of whisky or other intoxicating liquors. It was urged that there was no general consensus of opinion that to drink whisky is wrong, or that to be a nurse is discreditable; but the court said:

"If the advertisement obviously would hurt the plaintiff in the estimation of an important and respectable part of the community, liability is, not a question of a majority vote."

It was held she was entitled to have her case go to the jury.

It is argued that plaintiff has no stronger case than if her father had been libeled—that the libel of a parent gives no cause of action to a child. But it may be otherwise when, as here, she is individually featured in the publication and the relationship is made prominent. We think it is commonly recognized that the disgrace of a criminal is not infrequently visited upon members of his family, who have gained no independent position for themselves. The social standing of a young woman may be affected to an appreciable degree by the evil repute of her parents. At any rate, it cannot be said as matter of law that she suffers no injury. Nor is it a complete defense that all who were personally acquainted with plaintiff knew she was not the daughter of Henry Pierce. Without more, that would take no account of those who, as in every walk in life, know by appearance only.

The judgment is reversed, and the cause remanded for a new trial