### BURTON v. CROWELL PUB. CO.
### No. 258.

Circuit Court of Appeals, Second Circuit.

Feb. 10, 1936.

Joseph R. Truesdale, of New York City (Parker Bailey and Murray C. Bernays, both of New York City, of counsel), for appellant.

White & Case, of New York City (David Paine and Thomas Kiernan, both of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This appeal arises upon a judgment dismissing a complaint for libel upon the pleadings. The complaint alleged that the defendant had published an advertisement —annexed and incorporated by reference —made up of text and photographs; that one of the photographs was "susceptible of being regarded as representing plaintiff as guilty of indecent exposure and as being a person physically deformed and mentally perverted"; that some of the text, read with the offending photograph, was "susceptible of being regarded as falsely representing plaintiff as an utterer of salacious and obscene language"; and finally that "by reason of the premises plaintiff has been subjected to frequent and conspicuous ridicule, scandal, reproach, scorn, and indignity." The advertisement was of "Camel" cigarettes; the plaintiff was a widely known gentleman steeple-chaser, and the text quoted him as declaring that "Camel" cigarettes "restored" him after "a crowded business day." Two photographs were inserted; the larger, a picture of the plaintiff in riding shirt and breeches, seated apparently outside a paddock with a cigarette in one hand and a cap and whip in the other. This contained the legend, "Get a lift with a Camel"; neither it, nor the photograph, is charged as part of the libel, except as the legend may be read upon the other and offending photograph. That represented him coming from a race to be weighed in; he is carrying his saddle in front of him with his right hand under the pommel and his left under the cantle; the line of the seat is about twelve inches below his waist. Over the pommel hangs a stirrup; over the seat at his middle a white girth falls loosely in such a way that it seems to be attached to the plaintiff and not to the saddle. So regarded, the photograph becomes grotesque, monstrous, and obscene; and the legends, which without undue violence can be made to match, reinforce the ribald interpretation. That is the libel. The answer alleged that the plaintiff had posed for the photographs and been paid for their use as an advertisement; a reply, that they had never been shown to the plaintiff after they were taken. On this showing the judge held that the advertisement did not hold the plaintiff up to the hatred, ridicule, or contempt of fair-minded peo-

ple, and that in any event he consented to its use and might not complain.

■ We dismiss at once so much of the complaint as alleged that the advertisement might be read to say that the plaintiff was deformed, or that he had indecently exposed himself, or was making obscene jokes by means of the legends. Nobody could be fatuous enough to believe any of these things; ` everybody would at once see that it was the camera, and the camera alone, that had made the unfortunate mistake. If the advertisement is a libel, it is such in spite of the fact that it asserts nothing whatever about the plaintiff, even by the remotest implications. It does not profess to depict him as he is; it does not exaggerate any part of his person so as to suggest that he is deformed; it is patently an optical illusion, and carries its correction on its face as much as though it were a verbal utterance which expressly declared that it was false. It would be hard for words so guarded to carry any sting, but the same is not true of caricatures, and this is an example; for, notwithstanding all we have just said, it exposed the plaintiff to overwhelming ridicule. The contrast between the drawn and serious face and the accompanying fantastic and lewd deformity was so extravagant that, though utterly unfair, it in fact made of the plaintiff a preposterously ridiculous spectacle; and the obvious mistake only added to the amusement. Had such a picture been deliberately produced, surely every right-minded person would agree that he would have had a genuine grievance; and the effect is the same whether it is deliberate or not. Such a caricature affects a man's reputation, if by that is meant his position in the minds of others; the association so established may be beyond repair; he may become known indefinitely as the absurd victim of this unhappy mischance. Literally, therefore, the injury falls within the accepted rubric; it exposes the sufferer to "ridicule" and "contempt." Nevertheless, we have not been able to find very much in the books that is in point, for although it has long been recognized that pictures may be libels, and in some cases they have been caricatures, in nearly all they have impugned the plaintiff at least by implication, directly or indirectly uttering some falsehood about him. 5 Coke, 125 a & b; Cropp v. Tilney, 11 Mod. 99 (semble); DuBost v. Beresford, 2 Camp. 511; Austin v. Culpepper, 2 Shower, 313; Ellis v. Kimball, 16 Pick.(33 Mass.) 132; Brown v. Harrington, 208 Mass. 600, 95 N.E. 655; Merle v. Sociological, etc., Co., 166 App.Div. 376, 152 N.Y.S. 829.

The defendant answers that every libel must affect the plaintiff's character; but if by "character" is meant those moral qualities which the word ordinarily includes, the statement is certainly untrue, for there are many libels which do not affect the reputation of the victim in any such way. Thus, it is a libel to say that a man is insane (Totten v. Sun Printing & Pub. Co. [C.C.] 109 F. 289; Southwick v. Stevens, 10 Johns.[N.Y.] 443; Belknap v. Ball, 83 Mich. 583, 47 N.W. 674, 11 L.R.A. 72, 21 Am.St.Rep. 622); or that he has negro blood if he professes to be white (Stultz v. Cousins [C.C.A.6] 242 F. 794); or is too educated to earn his living (Martin v. Press Pub. Co., 93 App.Div. 531, 87 N.Y.S. 859); or is desperately poor (Moffatt v. Cauldwell, 3 Hun [N.Y.] 26); or that he is a eunuch (Eckert v. Van Pelt, 69 Kan. 357, 76 P. 909, 66 L.R.A. 266); or that he has an infectious disease, even though not venereal (Villers v. Monsley, 2 Wils. 403; Simpson v. Press Pub. Co., 33 Misc. 228, 67 N.Y.S. 401); or that he is illegitimate (Shelby v. Sun P. & P. Ass'n, 38 Hun [N.Y.] 474, affirmed on opinion below, 109 N.Y. 611, 15 N.E. 895); or that his near relatives have committed a crime (Van Wiginton v. Pulitzer Pub. Co., 218 F. 795 [C.C.A.8]; Merrill v. Post Pub. Co., 197 Mass. 185, 83 N.E. 419); or that he was mistaken for Jack Ketch (Cook v. Ward, 6 Bing. 409); or that a woman was served with process in her bathtub (Snyder v. New York Press Co., 137 App.Div. 291, 121 N.Y.S. 944). It is indeed not true that all ridicule (Lamberti v. Sun P. & P. Ass'n, 111 App.Div. 437, 97 N.Y.S. 694), or all disagreeable comment (Kimmerle v. New York Evening Journal, Inc., 262 N.Y. 99, 186 N.E. 217; Cohen v. New York Times Co., 153 App.Div. 242, 138 N.Y.S. 206), is actionable; a man must not be too thin-skinned or a self-important prig; but this advertisement was more than what only a morbid person would not laugh off; the mortification, however ill-deserved, was a very substantial grievance.

156

A more plausible challenge is that a libel must be something that can be true or false, since truth is always a defense. It would follow that if, as we agree, the picture was a mistake on its face and declared nothing about the plaintiff, it was not a libel. We have been able to find very little on the point. In Dunlop v. Dunlop Rubber Co. (1920) 1 Irish Ch.&Ld.Com. 280, 290–292, the picture represented the plaintiff in foppish clothes, and the opinion seems to rely merely upon the contempt which that alone might have aroused, but those who saw it might have taken it to imply that the plaintiff was in fact a fop. In Zbyszko v. New York American, 228 App.Div. 277, 239 N.Y.S. 411, however, though the decision certainly went far, nobody could possibly have read the picture as asserting anything which was in fact untrue; it was the mere association of the plaintiff with a gorilla that was thought to lower him in others' esteem. Nevertheless, although the question is almost tabula rasa, it seems to us that in principle there should be no doubt. The gravamen of the wrong in defamation is not so much the injury to reputation, measured by the opinions of others, as the feelings, that is, the repulsion or the light esteem, which those opinions engender. We are sensitive to the charge of murder only because our fellows deprecate it in most forms; but a head-hunter, or an aboriginal American Indian, or a gangster, would regard such an accusation as a distinction, and during the Great War an "ace," a man who had killed five others, was held in high regard. Usually it is difficult to arouse feelings without expressing an opinion, or asserting a fact; and the common law has so much regard for truth that it excuses the utterance of anything that is true. But it is a non sequitur to argue that whenever truth is not a defense, there can be no libel; that would invert the proper approach to the whole subject. In all wrongs we must first ascertain whether the interest invaded is one which the law will protect at all; that is indeed especially important in defamation, for the common law did not recognize all injuries to reputation, especially when the utterance was oral. But the interest here is by hypothesis one which the law does protect; the plaintiff has been substantially enough ridiculed to be in a position to complain. The defendant must therefore find some excuse, and truth would be an excuse if it could be pleaded. The only reason why the law makes truth a defense is not because a libel must be false, but because the utterance of truth is in all circumstances an interest paramount to reputation; it is like a privileged communication, which is privileged only because the law prefers it conditionally to reputation. When there is no such countervailing interest, there is no excuse; and that is the situation here. In conclusion therefore we hold that because the picture taken with the legends was calculated to expose the plaintiff to more than trivial ridicule, it was prima facie actionable; that the fact that it did not assume to state a fact or an opinion is irrelevant; and that in consequence the publication is actionable.

Finally, the plaintiff's consent to the use of the photographs for which he posed as an advertisement was not a consent to the use of the offending photograph; he had no reason to anticipate that the lens would so distort his appearance. If the defendant wished to fix him with responsibility for whatever the camera might turn out, the result should have been shown him before publication. Possibly any one who chooses to stir such a controversy in a court cannot have been very sensitive originally, but that is a consideration for the jury, which, if ever justified, is justified in actions for defamation.

Judgment reversed; cause remanded for trial.