ANNIE BRODERICK *v.* FREDERICK P. JAMES AND JULIA, HIS WIFE.

The foundation of the action for defamation, whether libel or slander, is an injury done to reputation; that is, that the plaintiff is injured thereby in the estimation of others.

In order to constitute a publication in an action for oral defamation, the words must be heard and understood by some person other than the plaintiff, to whom they were addressed, and in the absence of such proof, judgment should be for the defendant, although the answer sets up matter in mitigation, tending to prove the truth of the words alleged to have been spoken.

APPEAL from a judgment of the Marine Court.

The action was brought to recover damages for defamation of character. The plaintiff had been employed by the defendant, Mrs. James, as a seamstress. In February, 1869, Mrs. James left the city for the South, and remained away until May. When she returned, she found that a velvet dress, which had been left in the care of the plaintiff, had disappeared. In the month of October, 1869, upon going to a house to answer an advertisement of a cook, Mrs. James met the plaintiff there and had some conversation with her in the lower hall, and as the plaintiff testified, Mrs. James said: "Annie, you have stolen my dress." Upon the trial, the plaintiff was the only witness examined in her own behalf, and she testified that two women "were listening over the bannisters, and that Mrs. James spoke loud enough for the folks to hear." The defendants made no attempt to prove the matters alleged in their answer in mitigation. Upon the conclusion of the evidence, the justice rendered judgment for the plaintiff for $150 and costs, from which judgment the defendants appealed to this court.

*Edward D. James* and *Luther R. Marsh,* for appellants.

*John T. Sweeny,* for respondent.

By the Court.*—Daly, Chief Justice. The words relied upon as defamatory, were spoken by the defendant, Mrs. James, to the plaintiff, and there is nothing in the case to show that they were heard by any one but the plaintiff. Before the change in the law, by which parties are allowed to become witnesses in their own behalf, no action under such circumstances could be maintained, as the plaintiff would have to prove the speaking of the words by the person to whom they were addressed, or by some one who heard them, and for that reason no such question, as the one here presented, whether there was a publication, could arise.

The plaintiff testified, that the woman who owned the house, and a cook who was stopping there, were in the hall above, where the plaintiff was standing, listening to the conversation; but she did not know of her own knowledge, whether they heard anything or not, although Mrs. James spoke lond enough for folks to hear.

Mrs. James testified that she spoke very gently to the plaintiff, and that the word "stolen" was not used by her; so that the speaking of the defamatory words, which are relied upon as the cause of action, rests solely upon the uncorroborated testimony of the plaintiff.

It was an easy matter for the plaintiff to know whether the woman who owned the house and the cook heard what Mrs James said, by simply asking them, and if they did, they were witnesses who could have proved what they had heard. It is stated in the defendant's points, that the cook was in court and could have been called by the plaintiff, and as the statement is not questioned, we must conclude that it is true. The only witnesses examined upon the trial were the plaintiff and Mrs. James, and as their testimony in respect to what was said by Mrs. James is conflicting, we must assume, in accordance with the judge's finding, who was the one to judge of their respective credibility, that Mrs. James said what the plaintiff testified to. There being no evidence, however, that it was heard by any one, except the plaintiff, the point is presented, whether it

---

* Present—Daly, Ch. J., Loew and Robinson, JJ.

was a publication. Being *res nova*, it is to be determined by ascertaining with some preciseness the nature of the injury, for which an action of this description will lie, and what is a publication, that being essential to the cause of action. (*Craft* v. *Boite*, 1 Saund. 242, n. 1.)

The foundation of the action for defamation, whether libel or slander, is an injury done to reputation; that is, that the person is injured thereby in *the estimation of others*, (*Lyle* v. *Clason*, 1 Caines, 583). It is said by March, the writer of the earliest English treatise on the law of Defamation, that where a man's reputation, which is dearer to him than life, is endangered by scandalous words, the offender should be enforced by action to make composition, (March on Actions of Slander, First Part, Edition of 1655, p. 4); a passage showing very plainly that it is the injury done to the reputation which is the ground of the action. Now, no injury is done to a person's reputation unless the offensive words are uttered *to*, or in the presence and hearing of, a third person, and it is this which the law calls a publication.

Before March's book was written, it was decided, in an action for oral defamation, that the averment of the cause of action must be, or the language used by the pleader must imply, that the words were spoken *in præsentiâ et auditu aliorum*, (*Taylor* v. *How*, Cro. Eliz. 861), from which it follows that if uttered only to the party himself, and not in the hearing of others, there is no publication; for no injury can arise thereby to the party's reputation, unless it is produced by his communicating to others that which was said respecting him. Indeed, the general word which is employed both for libel and slander, "defamation," is of itself sufficiently explanatory, being derived from two Latin words—*de*, of, and *fama*, the talk of the multitude.

In *Hick's Case* (Hob. 215), it was held that no action would lie for sending a sealed letter containing scandalous matter to the person to whom it applied, and to whom the letter was addressed, upon the ground that this was not a publication; though it was an act for which an indictment would lie, as tending to stir up strife, produce quarrels, and lead to a breach

of the peace, (*Rex* v. *Wegener*, 2 Starkie N. P. 245 ; 2 Hawkins'' P. C. 356, § 11 ; March on Actions of Slander, 24). In *Philips* v. *Jansen* (2 Esp. R. 625), Lord Kenyon held that, to make a private letter a libel, it must be addressed to a third person, not to the party himself, and the letter in that case having been sent by the defendant to the plaintiff, the plaintiff was non-suited.

It has frequently been held that if the words are uttered in a foreign language, in the presence and hearing of others, it is necessary to show that they understood the language, or otherwise there is no publication, or, to express it in the language of Hobart, " slanderous words in Welsh bear no action, except you affirm that they were spoken in the hearing of them that understood the Welsh tongue." (*Fleetwood* v. *Curley*, Hob. Rep. 268*a*; *Gibs* v. *Jenkins*, Id. 191*a*; *Gibs* v. *Davie*, Id. 8 ; *Jones* v. *Davers*, Cro. Eliz. 496 ; *Wormouth* v. *Cramer*, 3 Wend. 394 ; *Amann* v. *Damm*, 8 Com. B. N. S. 597 ; Danver's Abm. 146, pp. 1, 2 ; Viner's Abm. Action for Words, A. G.) These authorities show that to constitute a publication in an action for oral defamation, the words must be heard and understood by some person other than the one to whom they were addressed. There was no proof in this case that the words were heard by any one but the plaintiff, and judgment should, therefore, have been given for the defendant.

It does not appear by the return upon what grounds the judge found for the plaintiff, but it is stated in the defendants' points that the judge said that he did so because the defendants had set up a justification in their answer, and had failed to prove it. The defendants, however, did not set up a justification. They denied the speaking of the words as alleged, and then, as they might do under the Code, set up matter in mitigation tending to prove the truth of the charge, (*Bush* v. *Prosser*, 11 N. Y. 347.) But it was wholly immaterial whether they did or not, or whether the charge was true or not, because as the words were spoken only to the plaintiff, and not in the hearing of any one else, there was no ground *ab initio* for the action. If the plaintiff had no cause of action whatever, it was of no consequence what defense beyond that the defendants

relied on. They raised the issue by denying the speaking of the words as laid, which imposed upon the plaintiff the necessity of proving what she had averred in her complaint, and the plaintiff having failed to do that, there was an end of the case. A party who has no ground for an action of slander when he brings his action, cannot maintain the action by founding it upon a statement made respecting him by the other party when examined as a witness upon the trial.

The judgment should be reversed.

Judgment reversed.