(153 App. Div. 242.)

COHEN v. NEW YORK TIMES CO.

(Supreme Court, Appellate Division, Second Department. November 15, 1912.)

1. LIBEL AND SLANDER (§ 15*)—WORDS ACTIONABLE PER SE—INJURY TO REPUTATION.

In order to make written words libelous per se, they must injure the reputation.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. § 15.*]

2. WORDS AND PHRASES—"REPUTATION."

"Reputation" is the general opinion or common knowledge of the community, being "a sort of right to enjoy the good opinion of others, and is as capable of growth and has as real an existence as an arm or leg. It is a personal right, and an injury to reputation (as by a libel) is a personal injury, within the meaning of statutes providing that injuries

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to a person shall not abate" (quoting and adopting the definition in 7 Words and Phrases Judicially Defined, 6118).

3. LIBEL AND SLANDER (§ 1*)—"LIBEL."

A "libel" is a malicious publication, expressed either in printing or writing, or by signs or pictures, tending either to injure the memory of one dead or the reputation of one living, and exposes him to public ridicule or contempt; the injury to reputation in the case of one living being the gist of the action.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1, 10; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 5, pp. 4116–4125.]

4. WORDS AND PHRASES—"RIDICULE."

As defined by the Century, Webster's, and Worcester's Dictionaries, the word "ridicule" conveys the idea of contempt and disparagement.

5. LIBEL AND SLANDER (§ 15*)—WORDS LIBELOUS PER SE.

The publication in a newspaper, under the heading "Died," of plaintiff's name and address and the date of his purported death, when he was in fact living, is not libelous per se, not injuring his reputation.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. § 15.*]

6. LIBEL AND SLANDER (§ 15*)—LIBEL—INJURY TO REPUTATION.

In determining whether an alleged libel has injured one's reputation, the question for decision is whether the publication tends to lower him in the opinion of men whose standard of opinion may be properly recognized.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. § 1; Dec. Dig. § 15.*]

Appeal from Special Term, Kings County.

Action by Zealy Cohen, by Siegfried G. Gilbert, his guardian ad litem, against the New York Times Company. The New York Herald Company intervenes. From an interlocutory judgment of the Supreme Court (74 Misc. Rep. 618, 132 N. Y. Supp. 1), overruling a demurrer to the complaint, defendant appeals. Reversed, and demurrer sustained.

See, also, 149 App. Div. 956, 133 N. Y. Supp. 1116.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, THOMAS, and CARR, JJ.

Emil Goldmark, of New York City (Alfred A. Cook, of New York City, on the brief), for appellant.

Meier Steinbrink, of Brooklyn, for respondent.

Robert W. Candler, of New York City, for intervener.

JENKS, P. J. The plaintiff complains for libel, in that defendant published of him in its newspaper false and defamatory matter "under the heading 'Died—Brooklyn: Cohen—Bealey, 133 St. Marks Avenue, May 6,' meaning and intending to mean and to convey thereby to the reading public the information that this plaintiff had died; that the matter so published was and is false and untrue, and subjected the plaintiff to general scorn, ridicule, and contempt, thereby causing him considerable annoyance and mental pain and suffering," to his damage $10,000. The defendant appeals from an

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

interlocutory judgment that overrules its demurrer that the complaint fails to state facts sufficient to constitute a cause of action.

[1] I am of opinion that the demurrer was well pleaded. A libel is an injury to the person (section 3343, Code of Civil Procedure), and specifically to reputation. Blackstone, in his Commentaries (book 3, c. 8, subd. 5) writes:

"Slander and Libel.—Lastly injuries affecting a man's reputation or good name are first by malicious, scandalous, and slanderous words tending to his damage or derogation."

Kent, in his Commentaries on the Rights of Persons (14th Ed., vol. 2, p. 16), writes:

"As a part of the right of personal security, the preservation of every person's good name from the vile arts of detraction is justly included."

In Lyle v. Clason, 1 Caines, 581, 583, it is said per curiam (doubtless by Kent, J.):

"The basis of the action is damages for the injury to character in the opinion of others."

Lord Halsbury, in The Laws of England (vol. 18, p. 605), writes:

"The actions of libel and slander are private legal remedies, the object of which is to repair the plaintiff for the private injury done to his right of reputation by the wrongful publication of defamatory statements concerning him."

Odgers on Libel and Slander (3d Ed.) writes that in each case the question will be:

"Have the defendant's words appreciably injured the plaintiff's reputation?"

In Moore v. Francis, 121 N. Y. 199, 23 N. E. 1127, 8 L. R. A. 214, 18 Am. St. Rep. 810, the court, per Andrews, J., say:

"The first and larger class of actions are those brought for vindication of reputation, in its strict sense, against damaging and calumnious aspersions."

Mr. Odgers, in his Lectures delivered in Middle Temple Hall in 1896, said:

"Next the words which are so written or printed or otherwise permanently recorded must be defamatory; that is, they must have injured the reputation of some one, must have made people think worse of him. I do not know that I can give you a better definition of a libel than that."

See, too, Street's Foundations of Legal Liability, vol. 1, Torts, 274; Kent's Comm. (14th Ed.) pp. 16, 17 et seq.; Cooley on Torts (3d Ed.) p. 366; Merrill on Newspaper Libel, 148; Folkard's Starkie on Slander and Libel, p. 1; Broderick v. James, 3 Daly, 482, and authorities cited.

[2] It follows that the words, to be actionable, must injure the reputation. Reputation is the general opinion of the community (Anderson's Law Dictionary); the common knowledge of the community (Gray, J., in Chellis v. Chapman, 125 N. Y. 214, 26 N. E. 308, 11 L. R. A. 784). In Words and Phrases Judicially Defined is is said:

"Reputation is a sort of right to enjoy the good opinion of others, and is as capable of growth, and has as real an existence, as an arm or leg. It is a

personal right, and an injury to reputation (as by a libel) is a personal injury, within the meaning of statutes providing that injuries to a person shall not abate. Johnson v. Bradstreet Co., 13 S. E. 250, 251, 87 Ga. 79."

Gray, J., writing for the court in Crashley v. Press Publishing Co., 179 N. Y. 27, 33, 71 N. E. 258, 259 (1 Ann. Cas. 196), says:

"If the article had imputed to the plaintiff the commission of that which is an heinous offense against organized society, and commonly known to be recognized as such by civilized nations, if it charged him with some conduct, which reflected upon his character, in such wise as to expose him to contempt, ridicule, or disgrace, it would be libelous per se."

Mr. Odgers, in his work on Libel and Slander, says:

"And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn, or ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse and society."

And further:

"The injury to the plaintiff's reputation is the gist of the action. He has to show that his character has suffered through the defendant's false assertions."

Mr. Newell, in his Slander and Libel (43), says:

"And so, too, are all words which hold the plaintiff up to contempt, hatred, scorn, or ridicule, and which, by thus engendering an evil opinion of him in the minds of right-thinking men, tend to deprive him of friendly intercourse and society."

In the Laws of England, by Lord Halsbury (vol. 18, p. 619), it is said:

"A statement is defamatory, within the foregoing definitions, as being calculated to expose a person to hatred, contempt, or ridicule, if it tends to lower him in the opinion of men whose standard of opinion the court can properly recognize, or to induce them to entertain an ill opinion of him."

Mr. Townshend, in his Slander and Libel (4th Ed.), has an instructive and learned note upon the difficulties of definition of libel. Section 21, note 2. See, too, 25 Cyc. p. 243.

[3] A definition very generally approved, and also adopted by Kent in his Commentaries (14th Ed., vol. 2, p. 17), is as follows:

"A malicious publication, expressed either in printing or writing, or by signs or pictures, tending either to injure the memory of one dead, or the reputation of one alive, and expose him to public hatred, contempt, or ridicule."

He refers, among other cases, to Clark v. Binney, 2 Pick. (Mass.) 113, where the court said that a definition in these exact words, made by Parsons, C. J., in Commonwealth v. Clap, 4 Mass. 168, 3 Am. Dec. 212, "is most clear and precise."

But it is to be noted that this definition does not convey the idea that words of scorn or hatred or ridicule are libelous, for the primary idea is injury to reputation. The definition would have stated the essentials if it had stopped with the words, "injure the * * * reputation of one alive," for the subsequent words, "and expose him to public hatred, contempt, or ridicule," are rather expressive as to the manner in which the reputation is injured than definitive of the

gist of the wrong. There are many instances of definitions which support this conclusion. Of these some are:

"False defamatory words, if written and published, constitute a libel." Odgers, page 1.

"Libel is a wrong occasioned by writing or effigy." Townshend, § 22.

"A defamatory publication, written and printed." State v. Barnes, 32 Me. at page 533.

"The malicious defamation of a person, made public by any printing, writing, effigy, or pictorial representation." Quinn v. Prudential Ins. Co., 116 Iowa, 522, 90 N. W. 349.

To the same effect, see Rice v. Simmons, 2 Har. (Del.) 309; Williams v. Karnes, 4 Humph. (Tenn.) 9; O'Brien v. Clement, 15 M. & W. 435–437. Also adopted by Bouvier as a definition, q. v. Thus it seems to me that whether the words hold a person up to ridicule, or to scorn, or to contempt, yet such words must have injured the reputation before they are actionable.

[4] I can find no argument to the contrary in the word "ridicule" itself. As authoritatively defined, it conveys the idea of contempt and disparagement. See Century Dictionary, Webster's Dictionary, and Worcester's Dictionary. And there can be no question that ridicule may affect injuriously a reputation. It is a rhetorical weapon that has been employed with that effect in countless instances as divers as Elijah's treatment of the priests of Baal and the writings of Sydney Smith. The article in Triggs v. Sun Printing & Pub. Ass'n, 179 N. Y. 153, 71 N. E. 742, 66 L. R. A. 612, 103 Am. St. Rep. 841, 1 Ann. Cas. 326, is purely ridicule, yet the court, per Martin, J., say:

"It seems impossible for any fair-minded person to read the articles alleged in the complaint without reaching the conclusion that they were not only intended, but necessarily calculated, to injure the plaintiff's reputation and to expose him to public contempt, ridicule, or shame."

[5] The question, then, whether this publication could be a libel per se, involves the inquiry whether it could have injured the reputation of the plaintiff. Here is a bare item of news in a newspaper. The item states that an event has come to pass which is looked for in the history of every man, is regarded as beyond his control, and therefore does not permit the inference that the man has done any act or suffered any act which he could not have done or which he need not have suffered. Prematurity is the sole peculiarity. How can the publication of such an event, merely as a matter of news, hold up the subject to scorn, to hatred, to contempt, or to ridicule, so that his reputation is impaired? Such publication may be unpleasant; it may annoy or irk the subject thereof; it may subject him to joke or to jest or to banter from those who knew him or knew of him, even to the extent of affecting his feelings; but this in itself is not enough. Samuels v. Evening Mail Association, 6 Hun, 5; Lombard v. Lennox, 155 Mass. 70, 28 N. E. 1125, 31 Am. St. Rep. 528; Duvivier v. French, 104 Fed. 278, 43 C. C. A. 529.

[6] The question is, as we have seen, whether the publication—

"tends to lower him in the opinion of men whose standard of opinion the court can properly recognize or to induce them to entertain an ill opinion of him." Lord Halsbury's Laws of England, supra; Mawe v. Pigott, Ir.

Rep. 4 C. L. 54, cited both by Lord Halsbury and in Folkard's Starkie on Slander and Libel, p. 234.

Newell on Slander and Libel, § 36, quotes Lord Wensleydale:

"Mental pain or anxiety the law cannot value, and does not pretend to redress, when the unlawful act complained of causes that alone; though where a material damage occurs, and is connected with it, it is impossible a jury, in estimating it, should altogether overlook the feelings of the party interested."

With more than formal respect for the learned court at Special Term, due to the learning and ability of the justice who presided there, I think that this case is not analogous to the cited cases of the reduced gentlewoman in Moffatt v. Cauldwell, 3 Hun, 26, of the over-educated scholar (Martin v. Press Publishing Co., 93 App. Div. 531, 87 N. Y. Supp. 859), of the deserted woman (Kirman v. Sun Printing & Pub. Ass'n, 99 App. Div. 367, 91 N. Y. Supp. 193), of the man dubbed Jack Ketch (Cook v. Ward, 4 M. & P. 99), or of the alleged suicide (Cady v. Brooklyn Union Publishing Co., 23 Misc. Rep. 409, 51 N. Y. Supp. 198); for in each of them there was not publication of a mere matter of news, but the incident was used, not alone to point a moral, but to adorn a tale, narrated in a sensational vein, and there was presented the feature well described by Barrett, J., in Moffatt v. Cauldwell, supra:

"It comes to this: That the question whether or no the matter is libelous, so as to be actionable, depends upon the style, scope, spirit, and motive of every such publication, taken in its entirety."

I do not read any of these judgments as announcing the proposition that they can be a libel, without affecting injuriously the reputation of the subject of the words. The learned Special Term cites the language of Gray, J., in Morrison v. Smith, 177 N. Y. 366, 69 N. E. 725, as follows:

"The principle upon which the rule of legal liability for damages rests is that no man possesses the right to lessen the comforts, or the enjoyment, of another, and that, when he does so deliberately, wantonly, and maliciously, it is, prima facie, evidence of malice, and he is bound to make compensation for the mischief occasioned."

But the learned judge theretofore said:

"At common law, that which implied reproach, scandal, or ridicule to any person, and reflected disgracefully upon his character, whether written or printed, was a libel, and was actionable without proof of special damage. The language used is to be understood by judge and jury in the same manner as others understand it, and words are to be taken in that sense which would be naturally conveyed to persons of ordinary understanding."

And thereafter said:

"Therefore, if by printing, or writing, bad actions, or vicious principles, are imputed to a man, and his respectability is diminished, his comfort and his enjoyment are lessened, by the attendant disgrace, contempt, or ridicule, and damage will be presumed."

And Gray, J., then concluded that the publication in question exposed the plaintiff "to contempt and to ridicule," with these words:

"None of her friends and acquaintances could fail to understand that, in the plaintiff's life, there had been passages of such a nature that only a wo-

man of unbalanced character and of foolish recklessness could have experi-
enced, which made interesting reading, and which the advertiser could not
print, but was publishing in typewritten form. This was an outrage upon
the reputation of a respectable woman."

In McBride v. Ellis, 9 Rich. (S. C.) 313, there was the publication
in a newspaper of the obituary notice of a woman. The action was
not against the newspaper, but against the individual who was charged
with sending the notice to the newspaper, apparently signed by a cit-
izen, and, moreover, in the communication the age of the woman
(95) was "greatly exaggerated." The learned court *concluded* that
such a notice was well calculated, under such circumstances, to sub-
ject one to ridicule, was intended and calculated to impair this lady
in the enjoyment of society, and to throw a contempt on her which
might affect her general comfort; and it also seemed to take into
consideration that there was malice in fact shown. The learned court
in the course of its opinion cites Villers v. Monsly, 2 Wils. 403, which
related to the publication that the plaintiff was affected with the itch,
which "cut him off from society;" Cook v. Ward, supra; ·Steele v.
Southwick, 9 Johns. 214, when the court held that, if the words did
not import perjury in a legal sense, they held him (i. ·e., the plaintiff)
"up to contempt and ridicule, as being so thoughtless, or so immoral,
as to be regardless of the obligations becoming a witness"; South-
wick v. Stevens, 10 Johns. 443, when the plaintiff was held up as hav-
ing become a lunatic, and subject to treatment as a maniac, although
the statement was ironical; Lake v. King, 1 Saun. 120–131, which has
no bearing save as a treatise; Bradley v. Methwyn, 2 Sel. N. P. "1062,
note 2," and Cropp v. Tilney, 3 Salk. 225, which dealt with "Riding
Skimmington." I am not inclined to regard the decision as a prec-
edent.

My conclusion is that the words are not libelous per se, and that,
therefore, the interlocutory judgment must be reversed, with costs,
and the demurrer sustained, with costs, with leave to plead over with-
in 20 days. All concur.