LUDOVIC PIGNATELLI, Plaintiff, *v.* THE SUN PRINTING AND PUB-
LISHING ASSOCIATION, Defendant.

Supreme Court, Kings Special Term, February, 1922. '

**Libel — demurrer to complaint setting forth neither innuendoes nor special damages — article must be libelous per se to sustain action — writing merely amusing and entertaining not basis of action.**

Where a complaint in an action for libel sets forth no innuendoes nor pleads special damages, the plaintiff is not entitled to recover damages to his reputation, unless the article be libelous *per se.*

Upon proof, however, that the article was false and untrue and was published with malice, either actual or implied, the plaintiff, if his reputation were injured, is entitled to recover his damages.

Where an article published in defendant's newspaper neither charged plaintiff with crime nor imputed to him any moral turpitude or disgraceful conduct, and the natural interpretation of the article is that it was published merely to entertain and by style and composition to make interesting and perhaps amusing a narrative of facts otherwise dull, but in no way discreditable to plaintiff, his motion for judgment on the pleadings, consisting of the complaint and a demurrer thereto, will be denied and a similar motion by defendant will be granted.

MOTION for judgment on the pleadings.

*Patterson & Brinckerhoff (John Patterson,* of counsel), for plaintiff.

*Watson, Harrington & Sheppard (Archibald R. Watson* and *John M. Harrington,* of counsel), for defendant.

BENEDICT, J.    In this action for libel each party has moved for judgment on the pleadings which consist of complaint and demurrer. The question presented by the motions is whether facts sufficient to constitute a cause of action are set forth in the complaint.

It is needless to repeat in this memorandum the alleged libelous article which appears *in extenso* in the complaint.    The complaint

sets forth no innuendos, nor does it plead special damage.   Unless, therefore, the article be libelous in and of itself the plaintiff cannot recover by reason of its publication any part of the damages to his reputation for which he is seeking to recover $50,000.   If, on the other hand, the plaintiff's reputation were injured by the publication of the article, he is entitled, on proof that the publication was false and untrue and was published with malice either actual or presumptive, to recover a judgment in libel and to have the damages assessed by a jury.

I have examined each of the cases cited on the able brief submitted by the counsel for the plaintiff.   I have also examined the opinions written by another justice of this court in the decision of similar motions in two other actions brought by this same plaintiff against two other newspaper publishers in which the alleged libels are claimed by his counsel to be similar to the one now under consideration.   I have also read the opinion handed down on February 20, 1922, by the Appellate Division in this department in *Kloor* v. *N. Y. Herald-Company,* 200 App. Div. 90, another action for libel, a copy of which opinion has been submitted since the argument of these motions.

Although the question involved in these motions may at first seem to be a close one in view of the numerous and various authorities on the subject, I have reached the conclusion that the article complained of is not libelous *per se.*   The rule that applies here is that " while words may hold a person up to ridicule, scorn or contempt, to be actionable they must injure the reputation."   The force and meaning of this rule are clearly stated in the opinion of Jenks, P. J., writing for an unanimous court, in *Cohen* v. *New York Times Co.,* 153 App. Div. 242, revg. 74 Misc. Rep. 618.   Quoting from Odgers on Libel and Slander (3d ed.) the learned justice says that " in each case the question will be ' Have the defendant's words appreciably injured the plaintiff's reputation? ' " and again quoting Mr. Odgers he says, " The words which are so written or printed or otherwise permanently recorded must be defamatory, that is, they must have injured the reputation of some one, must have made people think worse of him."   I am of the opinion that the case falls within the reasoning of another lucid opinion of Mr. Justice Jenks, concurred in by the other members of the court. See *Lamberti* v. *Sun Print. & Pub. Assn.,* 111 App. Div. 437, where he says: " To me it seems an absurd supposition that the article justifies the innuendo that it charged membership in the band known as the Black Hand.   Any fair-minded man — any man of ordinary ability and intelligence, reading the entire print — could not so construe it.   He who runs would read it as the story

Supreme Court, February, 1922. [Vol. 118

of a practical joke based on a physical pun — the existence of a 'black hand' on the plaintiff's back — and published to provoke laughter. * * * I think that the article is well within the words of Paxson, J., in *Press Co.* v. *Stewart* (119 Penn. St. 584, 603): 'The matter has been very much magnified and an importance attached to it which it does not deserve. An actionable libel cannot be created out of nothing.' Of course the mere fact that the print was a jest does not put the defendant out of peril. Ridicule may ruin a reputation or business. On the other hand, although there is more or less contempt in the laughter that ridicule excites (Cent. Dict.), it may be merely ' sportive or thoughtless,' and so be distinguished from derision. (Stand. Dict.) * * * While the public press cannot with impunity ruin or affect a man's fair name or his affairs under the guise of a joke or jest, on the other hand it need not be debarred from all humor, even of a personal kind that begets laughter and leaves no sting.'' The learned justice points out that the language then under consideration fell within the exception stated by the Court of Appeals in *Triggs* v. *Sun Printing & P. Assn.*, 179 N. Y. 144, 155, to the rule there stated that jest is not justification " unless it is perfectly manifest from the language employed that it could in no respect be regarded as an attack upon the reputation or business of the person to whom it related."

Reading the entire article published by this defendant, as we must do for the purpose of this inquiry, I agree with defendant's counsel that it does not seem that any fair-minded man of ordinary intelligence could construe it as one damaging to the plaintiff's reputation, but would naturally interpret it as one published merely to entertain, and by style and composition make interesting and perhaps amusing a narrative of facts otherwise dull, but in no way discreditable to the plaintiff.

The article under consideration differs in some particulars from those published in two other newspapers on account of the publication of which actions have been brought by this plaintiff, and hence I disclaim any intention of reviewing the decisions announced in those cases.

The defendant's article clearly does not charge the plaintiff with any crime nor does it impute to him any moral turpitude or disgraceful conduct. There is nothing in it which would tend to disparage the reputation of the plaintiff in the eyes of his friends, or which would cause people by reading it to shun his society or avoid his companionship. It is not calculated as I read it to degrade him in the estimation of his fellows nor expose him to ridicule, contempt or disgrace. See *O'Connell* v. *Press Pub. Co.*,

214 N. Y. 352.   Reduced to its essential terms it might be said to describe the plaintiff as not suited with the kind of work which his father-in-law offered to him and which he resigned after trying it for a week; or it might even be understood as charging the plaintiff with laziness and disinclination for any kind of manual labor.

Surely it cannot be said that to print of any one that he has relinquished or " thrown up ". or " given up " or " jumped " a position or " job " would be libelous.   Men are constantly changing positions, and resigning, relinquishing or quitting " jobs," as they are often called in common parlance, from all sorts of motives and for any reason or no reason at all.   If the article had falsely said that plaintiff had been forced to resign his position because he was found incompetent, dishonest, inattentive or disobedient, such a charge might injure his reputation and make it difficult for him to obtain like employment elsewhere.

If the article be understood to charge that the plaintiff refused to continue the work on account of indifference or laziness, it merely stated a fact that would be applicable to thousands of his fellow men.   He certainly was the best judge of whether he wished to labor or be idle.   There is an adage that " Men are as lazy as they can afford to be."   If there be no necessity for a man to labor, to say of him that he is idle or lazy can hardly injure his reputation any more than it would be libelous to say that he was selfish; and Ernest Renan wrote a book to prove that every man is prompted by selfishness in every act.   On the other hand, if a man be charged with a willful refusal to work when by his refusal others dependent on him are made to suffer, there is involved in the charge, if it be untrue, an element of disregard of duty which might be injurious to the reputation.

The plaintiff in this case is, I think, unduly sensitive in this matter.   The fact that he was a foreigner by birth perhaps is partly responsible for his taking the article so seriously, instead of regarding it as a harmless pleasantry on the part of some news-writer trying to make a livelihood by furnishing items of readable or amusing news to the press.   Most men of American lineage would, I believe, accept the article in a different spirit.   The plaintiff alleges in his complaint that he " is of so-called noble birth, being the Prince d'Aragon, of an ancient, noble and honorable family of Spain, with connection by blood or marriage with many persons in Europe."   This fact does not, however, change the law of the case.   As a friendly alien residing in this country his civil rights are exactly the same as if he had been born an American citizen.   No more, no less.   It does not appear whether he has become an American citizen by naturalization, so as also to have

acquired the same political rights as if born here, except of course, the right to be elected as president which is confined to native-born citizens.

Although apparently he is not a citizen, he is entitled to the protection of our laws and the doors of our courts are open to him if his civil rights be violated. But for the reasons briefly adverted to I hold that he is not entitled to maintain this action. Hence the demurrer interposed by the defendant is sustained and the complaint is dismissed. As no different state of facts could be alleged in the action by an amendment of the complaint, except perhaps to allege special damage which I do not understand is claimed to have been suffered, no leave to plead over is given to the plaintiff.

Motion by plaintiff denied, with ten dollars costs. Motion by defendant granted, with ten dollars costs.

Ordered accordingly.