**RENFRO DRUG CO. v. LAWSON.**

No. 2018.

Court of Civil Appeals of Texas. Eastland.

Sept. 27, 1940.

Rehearing Denied Oct. 25, 1940.

418 ■ 

Lyndsay ˙D. Hawkins, of Breckenridge, and Cofer & Cofer, of Austin, for appellant.

Floyd Jones, of Breckenridge, and J. A. Kibler, of Waco, for appellee.

Harry I. Freedman and Spafford & Spafford, all of Dallas, and McKay & Avery and Thomas B. Greenwood, all of Austin, amici curiæ.

FUNDERBURK, Justice.

A. R. Lawson, a resident of Stephens County, sued Renfro Drug Company, a corporation, having its residence in Travis County, Texas, to recover damages for the alleged publication and circulation by means of sale and offering for sale, at a news stand in its drug store, copies of a magazine containing pictures and an article constituting a libel of Louise Lawson, a deceased daughter of plaintiff. The defendant duly filed plea of privilege, which was controverted on the ground that the suit was one for libel and that the plaintiff was a resident of Stephens County, the county in which the suit was filed, at the time of the accrual of the cause of action. R.S.1925, Art. 1995, exception 29. The issue of privileged venue being tried, the court overruled the plea of privilege, to which action the defendant excepted and has appealed. The parties will be referred to as plaintiff and defendant, the same as in the trial court.

■ It seems to be agreed that under authority of Blanton v. Garrett, 133 Tex. 399, 129 S.W.2d 623; A. H. Belo Corp. ˙v. Blanton, 133 Tex. 391, 129 S.W.2d 619, and Compton v. Elliott, 126 Tex. 232, 88 S.W.2d 91, the plaintiff had the burden, among other things, of establishing the existence of the alleged cause of action. The defendant, in effect, contends that no such cause of action was shown by the evidence because under the law no such cause of action could exist. We take it to be now settled by the decisions in this State that in a libel suit proof that the plaintiff was a resident of a particular county at the time of the accrual of the cause of action, within the meaning of said exception 29, includes proof of the existence of the cause of action.

The first question for decision is whether a father may have a cause of action to recover damages for the publication or circulation of a libel which, as a defamation or injury to reputation, refers alone to a deceased daughter.

■ In 1901, at a time when causes of action to recover damages for libel in civil actions had long been recognized by law in this state, and criminal libel had long been defined and prohibited by the Penal Code, the Legislature enacted a statute, the purpose of which, as shown by its caption, was "to define civil libel, to declare certain newspaper reports to be privileged communications; to allow certain matters to be pleaded and proved in mitigation of exemplary damages in civil libel cases, and to declare an emergency." General Laws, Regular Session, 27th Legislature, c. 26, p. 30. The emergency declared was the recited fact that "there is now no law in this State defining libel and privileged publications." Id., § 5. A special provision of the Act read thus: "Nothing in this act shall be construed to amend or repeal any penal law on the subject of libel, nor to take away any existing defense to a civil action for libel, nor shall this act affect any suits now pending, or that may hereafter be brought upon a cause of action arising prior to the taking effect of this act." Id., § 4. The definition so prescribed was as follows: "A libel is a defamation expressed in printing or writing, or by signs and pictures, or drawings, tending to blacken the memory of the dead, or tending to injure the reputation of one who is alive, and thereby expose him to public hatred, contempt or ridicule, or financial injury, or to impeach the honesty, integrity or virtue or reputation of any one." Id., § 1. This definition supplemented in the 1911 revision of the civil statutes by the clause "or to publish the natural defects of any one and thereby expose such person to public hatred, ridicule, or financial injury" (R.S.1911, Art. 5595), has remained unchanged down to the present time. R.S. 1925, Art. 5430.

While prior to said Act of 1901 there was no *statutory* definition of libel as applicable to civil actions, the common law

was in effect by statutory adoption made January 20, 1840. Said adoption provision is now R.S.1925, Art. 1. Referable to such adoption of the common law was the recognition by the courts of this State of the existence of civil causes of action for libel. The adoption of the common law included, of course, the adoption of common law definitions of libel. When, therefore, the Legislature stated as the emergency for the immediate effectiveness of said Act that "there is now no law in this State defining libel," etc., it is reasonably to be inferred that it was meant there was then no *statute* law in this state defining libel, which was true, rather than that there was no definition of libel by any law in this state, which would have been untrue. There is thus naturally suggested the question: Did the Legislature, under such circumstances, merely, by adopting a statutory definition of libel, intend to create by such statute a character of cause of action not theretofore existing? If such was the intention, it not being expressed, must be inferred or implied from the terms of the statute.

It may be conceded that if the definition so prescribed by the statute had been materially different from the definition at common law the Act itself would have evidenced an intention to change the common law. But, it is contended by the defendant that the statutory definition was, in substance and effect, only a re-affirmation of a common law definition. We think the authorities relied upon sustain this contention. 18 American & English Encyclopedia, p. 968; 17 R.C.L. p. 262; Kent's Commentaries, vol. 2, p. 17; Cohen v. New York Times, 153 App.Div. 242, 138 N.Y.S. 206; Jacksonville Journal Co. v. Beymer, 42 Ill.App. 443; White v. Bourquin, 204 Ill.App. 83.

█ It is further contended, and we think fully supported by the authorities cited, that the common law, although the element of defamation of the dead was a part of the definition of libel, yet denied a right of action to recover in a civil action damages therefor in the absence of any injury to the *reputation* of one by or for whom an action was brought. 37 C.J. § 295, p. 11; Skrocki v. Stahl, 14 Cal.App. 1, 110 P. 957; Saucer v. Giroux, 54 Cal.App. 732, 202 P. 887; Bradt v. New Nonpareil Co., 108 Iowa 449, 79 N.W. 122, 45 L.R.A. 681; Fleagle v. Downing, 183 Iowa 1300, 168 N.W. 157;

Sorensen v. Balaban, 11 App.Div. 164, 42 N.Y.S. 654; Wellman v. Sun Printing, etc., Ass'n, 66 Hun 331, 21 N.Y.S. 577; In re Fleming, 223 App.Div. 849, 228 N.Y.S. 544; Eagles v. Liberty Weekly, Inc., 137 Misc. 575, 244 N.Y.S. 430.

The conclusion is a reasonable one, we think, that the only purpose of the Legislature expressed or implied in the Act of 1901, in the respect under consideration, was simply to make a common law definition of libel in civil cases a matter of statute law, just as the definition of libel in criminal cases was and had long been a matter of statute law.

█ If a cause of action had existed at common law in favor of one to recover damages for libel consisting alone of a defamation tending to blacken the memory of the dead, then such cause of action already existed in this state by reason of the aforesaid prior adoption of the common law. Even in the absence of such prior adoption it could reasonably be argued that said Act of 1901 in adopting the common law definition of libel implied the adoption of the common law itself so far as affected by such definition. But the statutory adoption of the common law definition without the expression of any intention to change the existing legal effect of same, instead of implying an intention to change the law, rather implied that the law was to remain unchanged.

The caption to said Act of 1901 gave no notice of any purpose to repeal or amend any law except, of course, as the necessary result of the declared definition. No change having been made in the definition except to make it a matter of statutory declaration, it necessarily follows, we think, that there was no change intended in the law.

Prior to the Act of 1901 it was a perfect defense to any suit for libel that there had been no defamation of, or injury to the reputation of the plaintiff (or one for whom the plaintiff sued). If the Act had the effect as contended by the plaintiff, such defenses were taken away. But the statute expressly provides that "Nothing in this act shall be construed * * * to take away any existing defense to a civil action for libel * * *."

█ It is to be borne in mind that the statutory definition of "libel" is not in itself sufficiently comprehensive to include all the essential elements of a cause of

420

action for libel consisting alone of a "defamation * * * tending to blacken the memory of the dead." More patently is this true as to a cause of action against one not committing the libel, other than by circulating it. The common law must be looked to in any such case for elements of a right of action. Essential to a right of .action for libel given by the common law or any statute, unless the one under consideration does so, is injury to the reputation of the plaintiff or one for whom plaintiff sues. If a cause of action is to be raised by implication, what is to be substituted for this and other elements? If injury to reputation is not to be the means of identifying the persons having the right of action, how are they to be identified? It is no answer, we think, so say that injury other than to the reputation of him who asserts, or for whom is asserted, the cause of action, is sufficient. There must necessarily be limitations and conditions which no court can supply without usurping legislative power. Take, for example, a loved personage like Will Rogers. Suppose ten or fifteen years after his death a defamation is published tending to blacken his memory. Who would be injured? In a sense, of course, thousands of his friends and admirers would be injured. But what authority would any court have to select from such thousands certain persons or classes and declare that they only had suffered a legal or compensable injury? If the statute did not impliedly exclude any intention to create a new cause of action, which we think it does, there would nevertheless be no basis for implying the essential elements of a cause of action not existing at common law, or by any other statute. This we take to have already been decided in Houston v. Interstate Circuit, Tex.Civ.App., 132 S.W.2d 903.

■ We are also of the opinion that if plaintiff had any cause of action against the defendant it was for *circulating* the libel. The evidence justified no other conclusion than that a sale and delivery of the magazine was, under the circumstances, necessary to show a circulation. The only sale and delivery shown by any evidence was of one copy to plaintiff's attorney after he was employed to bring the action. The only circulation of which there was any evidence was, therefore, we think, also shown to have been solicited or induced by the plaintiff through his attorney and is in law insufficient under the circumstances. 36 C.J. p. 1224, § 171; Id., p. 1230, § 189; Id., p. 1246, § 215; Patterson & Wallace v. Frazer, Tex.Civ. App., 79 S.W. 1077; Moore v. Leverett, Tex.Civ.App., 33 S.W.2d 838.

■ We are, therefore, of the opinion that the trial court erred in overruling the plea of privilege; that the judgment should be reversed and the venue of said cause transferred to a district court of Travis County, and it is accordingly so ordered.